James E. Cecchi
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
jcecchi@carellabyrne.com

*Attorneys for Plaintiff and the Proposed Class*

[Additional counsel appear on signature page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: FRAGRANCE DIRECT PURCHASER ANTITRUST LITIGATION | Civil Action No.: 23-2174 (WJM)(JBC) |

## BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL AND LIAISON COUNSEL FOR THE DIRECT PURCHASER CLASS

Plaintiffs Our Own Candle Company, Inc., Candle Shoppe of the Poconos, Inc., B&E Associates, Inc., Demeter F.L., Inc., and Hanna's Candle Company respectfully submit this memorandum supporting their motion under Rule 23(g) of the Federal Rules of Civil Procedure for the appointment of Linda Nussbaum of Nussbaum Law Group, P.C. ("NLG"), Christopher Burke of Korein Tillery, P.C. ("Korein Tillery"), and Hilary Scherrer of Hausfeld LLP ("Hausfeld") as "Interim Class Counsel," and James E. Cecchi of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. ("Carella Byrne") as "Liaison Counsel."

## I.    INTRODUCTION

Six complaints on behalf of the six Plaintiffs represented by more than a dozen law firms have now been filed against Defendants in this District alleging an anticompetitive conspiracy in the fragrances industry and seeking to represent a class of direct purchasers of fragrances and fragrance ingredients. Successful prosecution of this complex antitrust class action requires experienced and skillful lawyers to develop the pleadings, conduct fact and expert discovery, certify the class, win at summary judgment, and either successfully try this case or negotiate a favorable settlement.  But all the experience and skill in the world will not matter if different sets of plaintiffs' lawyers are pulling in different directions. Plaintiffs have also been working with Defense counsel, and anticipate filing a joint stipulation for consolidation of the six overlapping actions (which is also a product

1

of Plaintiffs' attorneys working cohesively), in the very near future. Accordingly, the interests of Plaintiffs and the putative class are now best served by appointing of Interim Class Counsel and Liaison Counsel to lead the prosecution of this litigation.

To that end, Plaintiffs have agreed through private ordering that a leadership structure with three Interim Class Counsel and a Liaison Counsel will best serve the interests of the putative class, providing efficient and effective prosecution of this case. The MANUAL FOR COMPLEX LITIGATION (4th) encourages efforts that privately order leadership in complex litigation. *See* MANUAL FOR COMPLEX LITIGATION (4th), at §10.22.

We recognize that the Court may ask, "What is the need for an order when counsel has already agreed to work together in the proposed structure?" The answer is straightforward – Court approval is necessary to clarify responsibility among Plaintiffs' counsel, which will ensure continued coordination and avoid unnecessary inefficiency and controversy. In addition, as a matter of public policy, the firms, who have already committed huge resources to this case, should be afforded the full authority of Rule 23(g), which should not be disturbed by any successive copycat complaints. Given that the Plaintiffs have agreed on a leadership structure, the Court's task is thus to determine whether the chosen counsel are adequate to serve. *See* MANUAL FOR COMPLEX LITIGATION (4th) at §21.11.

Each attorney and their respective firms proposed as Interim Class Counsel are well-qualified, having extensive experience successfully prosecuting complex antitrust cases. Plaintiffs' proposed Liaison Counsel has a long track record of successfully prosecuting complex class actions in this Court as lead counsel, co-lead counsel, and liaison counsel. Moreover, proposed Interim Class Counsel and Liaison Counsel have successfully worked together in the past on other complex antitrust class actions, which will enhance efficient and effective representation of the class here As further discussed below, each of the lawyers and their respective firms meets the qualifications set forth in Rule 23(g)(1)(A) & (B). Plaintiffs' proposed leadership structure concentrates leadership in a reasonably small group while, at the same time, providing Plaintiffs and the putative class with the necessary human and financial capital to properly prosecute this action. For these reasons, as more fully set below, Plaintiffs respectfully request the Court grant their motion and appoint Linda Nussbaum of NLG, Christopher Burke of Korein Tillery, and Hilary Scherrer of Hausfeld as Interim Class Counsel and James E. Cecchi of Carella Byrne as Liaison Counsel.

## II.    BACKGROUND

Defendants are the world's largest manufacturers of fragrance ingredients and compounds. In March 2023, competition authorities in the United States, Switzerland, United Kingdom, and European Union announced they were

investigating Defendants for anticompetitive conduct with respect to fragrances and fragrance ingredients.  Since those announcements, Plaintiffs brought six class actions in this District against Defendants, asserting antitrust claims on behalf of a class of direct purchasers of fragrances and fragrance ingredients.

The first case was filed on April 18, 2023 on behalf of Our Own Candle Company, Inc.  On May 19, 2023, counsel for Our Own Candle, Linda Nussbaum and Jim Cecchi, moved for appointment of Co-Lead Counsel.  ECF No. 5.  On June 7, 2023, the Court denied the request without prejudice on the grounds that no other attorneys had made appearances on behalf of other plaintiffs, such that there were overlapping, duplicative, or competing suits pending in other courts.  *See* ECF No. 13 at 1-2.

Since Our Own Candle's leadership request was filed, five more class action complaints have been filed.[1]  Each complaint was filed by a plaintiff represented by different counsel (with the exception of Mr. Cecchi, who serves as counsel on five of the six complaints), with more than a dozen of law firms  now involved in the

---

[1]      The five subsequently filed cases are: *B & E Associates, Inc. v. Firmenich S.A. et al*., Case No. 2:23-cv-03050-WJM-JBC; *Candle Shop of the Poconos, Inc. v. Givaudan S.A. et al*., Case No. 2:23-cv-03049-WJM-JBC; *Demeter F.L., Inc. v. International Flavors & Fragrances Inc. et al*., Case No. 2:23-cv- 3265-WJM-JBC; *Hannas Candle Company v. International Flavors & Fragrances Inc. et al*., Case No. 2:23-cv- 3266-WJM-JBC; and *Cospro Development Corp. v. International Flavors & Fragrances Inc. et al*., Case No. 2:23-cv-03368-WJM-JBC.

4

direct purchaser actions.[2]  All plaintiffs' counsel in the six direct purchaser complaints believe that now is the time to appoint Interim Class Counsel and Liaison Counsel to efficiently and effectively move these consolidated cases forward. Among the early tasks that will be aided by appointment of Interim Counsel are the filing of a consolidated complaint, defending that complaint against Defendants' anticipated motions to dismiss, and negotiating pre-trial orders, such as a protective order and ESI protocol.  Later on, Interim Class Counsel will conduct fact and expert discovery, move for class certification, seek or defend against summary judgment, and try the case, if necessary.  All the while, Interim Class Counsel will be responsible for any potential settlements of this matter with one or more defendants. All of the preceding tasks will benefit from this leadership structure, and both the Court and Defendants will benefit from knowing one set of lawyers will represent all the Plaintiffs and the putative class.  Accordingly, counsel engaged in private ordering, as encouraged by Rule 23(g), and reached a consensus view regarding the proposed leadership structure.

---

[2]    Another complaint against Defendants, filed on June 13, 2023, similarly alleges an anticompetitive conspiracy in the fragrances industry, but seeks to represent indirect, rather than direct purchasers. *See Chautauqua Soap Co. v. Givaudan S.A.*, No. 23-3249.

## III.   ARGUMENT

Rule 23 specifically provides that a court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3).  Selection of interim lead counsel early in the litigation facilitates "efficiency and economy without jeopardizing fairness to the parties." *See* MANUAL FOR COMPLEX LITIGATION §10.22 (4th ed. 2004) (interim counsel "assume a responsibility to the court and an obligation to act fairly, efficiently, and economically in the interests of all parties and parties 'counsel").  In matters such as this, appointing seasoned lead counsel is one of the district court's key organizational tools. *Id*. §§10.224, 21.272.  The "designation of interim [class] counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Id*. §21.11.

Rule 23(g) sets forth four considerations for the appointment of interim class counsel: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).  No single factor is determinative; all

factors must be weighed to determine who can best represent the class. Advisory Committee Notes (2003 Amendments). The primary goal in appointing leadership in a complex action "is achieving efficiency and economy without jeopardizing fairness to the parties." Manual §10.221 (4th ed. 2004). Plaintiffs' proposed leadership easily satisfies all these requirements, as discussed in more detail below.

### A.    Appointing Interim Class Counsel Is Appropriate and Necessary at This Time

The Court denied Plaintiff Our Own Candle's previous request to appoint interim class counsel because such appointment was "unnecessary" at that time due to absence of "overlapping, duplicative or competing suits." ECF No. 13. The Court noted that "Should concerns listed in the Manual for Complex Litigation arise before this Court has certified a class, counsel may renew their request." *Id*. at 2.

There are six separate class actions filed by six Plaintiffs on behalf of the same putative direct purchaser class pending in this Court. More than a dozen law firms represent Plaintiffs in the various cases. Although, under the organization of proposed leadership group, counsel for Plaintiffs have been working cooperatively to date to advance this litigation in an efficient way, "appointment of interim class counsel at this time will ensure continued cooperation amongst said counsel throughout the pre-certification process, which will serve to protect the interests of the putative class during that time." *Beture v. Samsung Elecs. Am., Inc.*,

No. CV 17-5757 (SRC), 2018 WL 3159875, at *1 (D.N.J. Mar. 27, 2018). Appointing Interim Class Counsel is appropriate and necessary at this time to prevent inefficiencies and ensure the counsel for the putative direct purchaser class speak with a unified voice.

## B.     The Proposed Three-Firm Leadership Structure Is the Product of Private Ordering

The proposed interim leadership structure is the product of private ordering, which is a common means of selecting class counsel, and which is encouraged in the organization of class counsel. *See* MANUAL FOR COMPLEX LITIGATION (4th ed. 2015) §21.272. ("The lawyers agree who should be lead class counsel and the court approves the selection after a review to ensure that the counsel selected is adequate to represent the class under Rule 23(g)."); §10.22 ("In some cases the attorneys coordinate their activities without the court's assistance, and such efforts should be encouraged."). This application reflects the considered consensus of all counsel for Plaintiffs in the six related class actions.

The putative direct purchaser Plaintiffs allege an anticompetitive conspiracy against the four largest fragrance manufactures in the world, many of which are headquartered in foreign countries. Defendants have retained experienced and capable antitrust counsel backed by top defense firms who will vigorously defend the case at every stage. Given the size and complexity of this matter, to best represent the interest of the putative direct purchaser class, Plaintiffs believe a three-

firm leadership structure is warranted. To that end, Plaintiffs' counsel worked diligently to reach agreement to a leadership structure that will allow for the efficient utilization of all of the various talents and resources that can bring to bear. Courts routinely appoint multi-firm structures, particularly in complex cases where the firms had engaged in extensive private ordering, as here. *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2017 WL 679367, at *27 (N.D. Cal. Feb. 21, 2017) (three co-lead counsel, liaison counsel, and five-firm executive committee); *In re Nat'l Football Leagues Sunday Ticket Antitrust Litig.*, No. ML 15-02668-BRO, 2016 WL 6693146, at *4 (C.D. Cal. May 23, 2016) (four co-lead counsel, five committee members); and *Ehler v. IPEX, Inc.*, No. 08-cv-02220-CMA-BNB, 2009 WL 1392075, at *2 (D. Colo. May 15, 2009) (five co-lead counsel).

### C. The Proposed Leadership Group Have Conducted Significant Work Investigating Potential Claims and Advance the Litigation

NLG filed the first class complaint in this Court on April 18, 2023, almost two months before the other complaints were filed. Since filing, NLG has completed service of the complaint on domestic defendants; initiated Hague service on the foreign defendants (and has it in-progress); conducted multiple meet and confer sessions with defense counsel; drafted and submitted to defense counsel a Protective Order and ESI Protocol for the litigation; agreed with defense counsel on preliminary scheduling and had it so ordered by the Magistrate Judge Clark; and coordinated with other plaintiffs' counsel when they filed complaints.

Korein Tillery filed after conducting a comprehensive investigation. Korein Tillery started monitoring Defendants' conduct in the fragrance market before the government authorities announced their investigations. For months, Korein Tillery reached out to and consulted multiple industry participants and experts on the issues relating to fragrance market structure and Defendants' activities. Korein Tilley's attorneys also investigated and reviewed Defendants' public disclosures, presentations, and announcements about their pricing strategy. Korein Tillery's extensive investigation resulted in significant, detailed factual allegations in the B&E complaint that go well beyond the investigation announcements issued by the regulators.

Hausfeld similarly worked for months to identify and investigate the claims here. Hausfeld retained economic experts both in the United States and in Europe, analyzed market data and reports, and studied the industry closely before filing complaints in this litigation. Hausfeld also engaged in extensive outreach to numerous industry insiders and fragrance purchasers of various sizes and across market sectors, working with them and its clients to understand the industry structure, market players, pricing practices, and products at issue. Those months of effort are demonstrated in its detailed and well-supported complaint.

As encouraged by the MANUAL FOR COMPLEX LITIGATION, Fourth, §10.22, the proposed leadership group also coordinated to move the case forward, which

included: (1) continuing consultations with industry and economic experts; (2) continuing investigating the fragrance industry and following the on-going regulatory investigations; (3) organizing and leading conferences among plaintiffs' counsel regarding case management; (4) working with other counsel for direct purchaser plaintiffs and Defendants to negotiate a stipulation to consolidate the six actions for all purposes; and (5) drafting a consolidated complaint. These efforts weigh strongly in favor of this application.

### D. The Proposed Leadership Group Are Experienced, Knowledgeable, and Will Commit the Resources Necessary to Representing the Class

As leaders in the field who have successfully resolved other substantial antitrust class cases, the proposed leadership group are ready, willing and able to devote all resources necessary to successfully prosecute this case through the pleadings, discovery, class certification, and trial, successfully.

#### 1. NLG

Nussbaum Law Group, PC ("NLG") is a litigation firm specializing in the prosecution of precedent-setting class litigation with the singular focus of providing the highest level of service and best results. Linda Nussbaum, the firm's founder, has been at the forefront of landmark fair competition and other complex class cases for over 40 years. The firm's experienced litigators have played leading roles in recovering billions of dollars for their clients from the world's largest corporations.

The firm has repeatedly successfully represented individuals, public companies, and classes in significant and high-stakes, multifaceted litigation in courts throughout the country.

Ms. Nussbaum has successfully managed cases with collegiality, effectiveness, and efficiency, in accordance with the letter and spirit of Rule 1, while, at the same time, recovering billions of in valuable relief for her clients. By way of example only, she has been honored to have been selected as one of two co-lead counsel in two antitrust class action cases in the District of New Jersey. First, in June 2003, she was appointed co-lead class counsel by Judge Faith S. Hochberg in *In re Remeron Antitrust Litig.*, No. 2:03cv0085-FSH-PS, Dkt. No. 37 (D.N.J.). After several years of contested litigation, that case settled for $75 million. In January 2012, Ms. Nussbaum was appointed by Judge Linares to serve as co-lead counsel in *Castro, et al. v. Sanofi Pasteur, Inc.*, No. 2:11cv07178-JLL-MAH, Dkt. No. 27 (D.N.J.). The Castro case alleged anticompetitive conduct by the manufacturer of Menactra and other pediatric vaccines. Judge Linares denied the motion to dismiss, and defendants' affirmative defenses and counterclaims against the named plaintiffs, in favorable opinions. *See* Dkt. Nos. 106, 135. After that case was later reassigned, Judge Arleo held a three-day Daubert hearing, rejected Defendants' Daubert attack, and certified the direct purchaser class. *See* Dkt. No. 415. That case ultimately settled for $61.5 million. In addition, Ms. Nussbaum has recently served with Mr.

Cecchi on the Plaintiffs' Steering Committee in *In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 2:16-md-02687-MCA-MAH (D.N.J.) (now settled) and is currently serving as one of the Co-Lead Counsel for the LabCorp Track in *In re American Medical Collection Agency, Inc., Customer Data Security Breach Litig.*, No. 2:19-md-02904-MCA-MAH (D.N.J.) pending before Judge Arleo.

Ms. Nussbaum been appointed to the leadership of numerous antitrust class actions alleging anticompetitive activity in the chemical additives industry, where a number of those cases, like this one, had parallel criminal proceedings.[3]  Over the years, she has developed expertise in handling those matters and the rather unique challenges that those cases can present in discovery and class certification.  Many of these cases involved foreign defendants and international investigations.

Ms. Nussbaum has served as Lead or Co-Lead counsel in over 25 direct purchaser antitrust class actions in jurisdictions throughout the United States,

---

[3]  Chemical additive cases include: *In re Sorbates Direct Purchaser Antitrust Litig.*, No. 3:98cv04886-MMC (N.D. Cal.) (Co-Lead) (settled for $92 million, November 2002); *In re Methionine Antitrust Litig.*, MDL No. 1311, 3:00md01311- CRB (N.D. Cal.) (Co-Lead) (settled for $107 million, June 2003); *In re Plastics Additives Antitrust Litig.*, MDL No. 1684, Master Docket No. 2:03cv02038-LDD (E.D. Pa.) (Co-Lead) (settled for $46.8 million, June 2008); *In re Microcrystalline Cellulose Antitrust Litig.*, MDL No. 1402, Master File No. 2:01cv00111-TON (E.D. Pa.) (Co-lead) (settled for $50 million, November 2006); *In re Rubber Chemicals Antitrust Litig.*, MDL No. 1648, 3:04md01648-MMC (N.D. Cal.) (Co-Lead) (settled for $319.5 million, November 2006); and *In re Foundry Resins Antitrust Litig.*, MDL No. 1638, 2:04md01638-GLF-MRA (S.D. Ohio) (Co-Lead) (settled for $14.1 million, March 2008).

including this District.[4]  Many of these cases have involved foreign defendants under

investigation by competition authorities in the U.S. and European Union, with guilty

---

[4]    *In re Sorbates Direct Purchaser Antitrust Litig.*, No. 3:98-cv-04886-MMC
(N.D.Ca.) (USDJ Maxine M. Chesney); *In re Lorazepam & Clorazepate Antitrust
Litig.*, MDL No. 1290, 99-ms-00276-TFH (D.D.C.) (Chief Judge Thomas F.
Hogan); *In re Methionine Antitrust Litig.*, MDL No. 1311, 3:00-md-01311-CRB
(N.D. Ca.) (USDJ Charles R. Breyer); *Oncology & Radiation Associates, P.A. v.
Bristol-Myers Squibb Company & American Bioscience*, 1:01-cv-02313-EGS
(D.D.C.) (USDJ Emmet G. Sullivan); *In re Relafen Antitrust Litig.*, No. 01-cv-12239
(D. Mass.); *Meijer, Inc. v. SmithKline Beecham*, 01-cv-12239-WGY (D. Mass.)
(Chief Judge William G. Young); *In re Microcrystalline Cellulose Antitrust Litig.*,
MDL No. 1402, 01-cv-00111-TNO (E.D. Pa.) (USDJ Thomas N. O'Neill Jr.); *In re
Plastics Additives Antitrust Litig.*, MDL No. 1684, 03-cv-02038-LDD (E.D. Pa.)
(USDJ Legrome D. Davis); *In re Remeron Direct Purchaser Antitrust Litig.*, Master
Dkt 02-2007-FSH (D.N.J.); *Meijer, Inc. v. Organon, Inc.*, No. 2:03-cv-0085-FSH
(D.N.J.) (USDJ Faith S. Hochberg); *In re Foundry Resins Antitrust Litig.*, MDL No.
1638, 04-md-01638-GLF (S.D. Ohio) (USDJ Gregory L. Frost); *North Shore
Hematology-Oncology Associates, P.C. v. Bristol-Myers Squibb Co.*, 1:04-cv-
00248-EGS (D.D.C.) (USDJ Emmet G. Sullivan); *In re Children's Ibuprofen Oral
Suspension Antitrust Litig.*, 1:04-mc-00535-ESH (D.D.C.); *Meijer, Inc. v. Perrigo
Company and Alpharma Inc.* (D.D.C.) (USDJ Ellen S. Huvelle); *In re Rubber
Chemicals Antitrust Litig.*, 04-md-01648 (N.D. Ca.) (USDJ Maxine M. Chesney);
*Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, No. 05-cv-02195-CKK
(D.D.C.) (USDJ Colleen Kollar-Kotelly); *In re DDAVP Direct Purchaser Antitrust
Litig.*, 05-cv-02237-CS (S.D.N.Y.) (USDJ Cathy Seibel); *Meijer, Inc. v. Abbott
Laboratories*, No. 07-cv-05985-CW (N.D. Ca.) (USDJ Claudia Wilkin); *Meijer, Inc.
v. Braintree Laboratories, Inc.*, No. 07-cv-00143 (D. Del.) (Special Master B.
Wilson Redfearn); *Castro v. Sanofi Pasteur, Inc.*, 2:11-cv-07178-JMV-JBC (D.N.J.)
(USDJ Jose L. Linares); *Meijer, Inc. v. Warner Chilcott Public Limited Company*,
12-cv-03824-PSD (E.D. Pa.) (USDJ Paul S. Diamond); *In re Aluminum
Warehousing Antitrust Litig.*, No. 1:13-md-02481-PAE (S.D.N.Y.) (USDJ Paul A.
Engelmayer); *In re Zinc Antitrust Litig.*, No. 2:14-cv-03728-PAE (S.D.N.Y.) (USDJ
Paul A. Engelmayer); *IV Saline Solutions Antitrust Litig.*, *Washington County
Health Care Authority, Inc. v. Baxter International Inc.*, No. 1:16-cv-10324-JJT
(N.D.Ill.) (USDJ John J. Tharp Jr.).

pleas and ACPERA defendants.  NLG's firm resume is attached as Exhibit 1 to the Cecchi Declaration.

### 2.    Korein Tillery

Korein Tillery is one of the country's leading and most successful plaintiffs' complex-litigation firms, representing a broad array of clients in high-stakes lawsuits and delivering over $18 billion in verdicts and settlements over the last 16 years. Korein Tillery is financially sound, self-funding all of its cases, which strictly aligns the firms' interest with its clients and the classes.  The National Law Journal has put the firm on its "Plaintiffs' Hot List" seven times, and named it to its "50 Elite Trial Lawyers" list in 2014 and 2015.  Between 2011 and 2016, Korein Tillery (along with co-counsel) recovered more than $5.1 billion for NCUA in sprawling securities litigation spanning three circuits.  Recently, in *Senne v. Office of the Commissioner of Baseball*, No. 3:14-cv-00608 (N.D. Cal.), Korein Tillery settled a ground-breaking matter on behalf of minor league baseball players for $185 million – one of the largest wage-and-hour settlements in history.  In the final approval order, Judge Spero wrote that Korein Tillery "has handled this case skillfully and with professionalism, diligently pursuing the interests of the players.  The significant relief they have obtained under the Settlement Agreement is, in no small part, due to their expertise and dedication."  *Id.*, Order at 12, ECF No. 1190.

The Korein Tillery team will be led by Mr. Christopher Burke.  Mr. Burke has been appointed lead counsel in many high-stake and complex antitrust class actions and his work has been widely honored by the legal industry.  Collectively, Mr. Burke recovered over $10 billion on behalf of class members.  For example, Mr. Burke was appointed lead counsel in *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13-cv-7789 (S.D.N.Y), which recovered $2.3 billion for class members. Renowned mediator Kenneth Feinberg concluded that the FX settlements "represent[] some of the finest lawyering toward a negotiated resolution that I have witnessed in my career" and described Mr. Burke and his co-counsel as "superlative, sophisticated, and determined plaintiffs' lawyers." *Id*. Dkt. No. 925 at 2, 926, ¶29. Mr. Burke has been recognized three times (2014, 2018, and 2020) by the American Antitrust Institute for exemplary work in private enforcement of the antitrust law.

At its core, the fragrance industry is applied chemistry.  It is the manipulation of molecules to create scents that influence purchasing decisions.  Korein Tillery attorneys have unique expertise and knowledge regarding chemistry, which is exceptionally valuable to a case concerning fragrance compound and ingredients. Korein Tillery attorney Rosemarie Fiorillo has an extensive background in science. She is a member of the Society of Toxicology – a professional and scholarly organization of scientists from academic institutions, government, and industry representing the great variety of scientists who practice toxicology in the US and

abroad.  Ms. Fiorillo has published original scientific research with the herbicides paraquat, atrazine, and 2,4-D and has an extensive background in environmental engineering.  The core of her scientific research and background is chemistry and biochemistry.  She understands the chemistry of natural products, as well as, their synthetic production.  She successfully led litigation teams in three environmental chemistry cases against multi-national companies.  She has retained and worked with the key scientific experts in the areas of chemistry, biology, biochemistry, toxicology, and epidemiology.  Ms. Fiorillo has recovered hundreds of millions of dollars on behalf of her clients.

As a leader in the field who have successfully resolved other substantial antitrust class cases, Korein Tillery is ready, willing and able to devote all resources necessary to successfully prosecute this case from the pleadings, discovery, class certification, all the way through trial.  Should this case go to trial, the plaintiff class will be represented by the team with a proven track record of winning complex trials. Korein Tillery attorneys have devoted substantial resources and tried numerous class actions, including antitrust cases, to judgment and/or verdict.  In total Korein Tillery attorney have tried more than 100 cases, including a historic $10.1 billion verdict against Philip Morris.  Korein Tillery attorneys have been nominated for numerous regional and national trial lawyer awards, and have won many landmark decisions

in state and federal appellate courts, including the Supreme Court of the United States.

As explained above, Korein Tillery is willing to dedicate a roster of experienced attorneys to efficiently and expeditiously litigate this case. Korein Tillery's firm resume is attached as Exhibit 2 to the Cecchi Declaration.

### 3.    Hausfeld

Hausfeld is one of the world's preeminent plaintiffs-side litigation firms. Since its formation in 2008, Hausfeld has served in a leadership role in more than 85 antitrust and other complex class actions. The firm has litigated and tried some of the most challenging cases, achieved many precedent-setting legal decisions, negotiated some of the most complex settlement agreements, and recovered billions of dollars on behalf of plaintiffs and class members.

Hausfeld and its attorneys are experts in prosecuting global antitrust cases that include foreign defendants. Moreover, Hausfeld is alone among Plaintiffs' counsel involved in this case to have offices in Europe, including in the United Kingdom and Germany (Berlin and Düsseldorf) where competition authorities are investigating the defendants' conduct. Hausfeld's attorneys in its European offices have assisted with its investigation and are prepared to assist in discovery relating to the European defendants as required.

The firm's stature has been widely recognized by legal industry observers. For example, *The Legal 500* has praised Hausfeld as "a leading firm for antitrust damages in Europe and the US" with a "number of heavyweight practitioners," and *Global Competition Review* has raved that "the lawyers at Hausfeld have established themselves as one of — if not the — top plaintiffs' antitrust firm in the US."

The Hausfeld team will be led by partner Hilary Scherrer, who has over two decades of experience leading and litigating antitrust class actions. Her cases have recovered over $2 billion for victims of anticompetitive conduct. In recognition of her case successes, she received the American Antitrust Institute's Award for Outstanding Antitrust Litigation Achievement in Private Law Practice twice, as part of the *In re Air Cargo Shipping Services Antitrust Litigation* and *O'Bannon v. NCAA* case teams.

Particularly relevant to this case, Ms. Scherrer has extensive experience litigating cases against foreign defendants. She is currently leading *In re Libor-Based Financial Instruments Antitrust Litigation* (S.D.N.Y.), alleging a global conspiracy by some of the world's largest banks to manipulate LIBOR, the primary benchmark for short-term interest rates. In the case, which includes 13 foreign defendants (including defendants in Germany and Switzerland where three of the defendants in this case reside), Ms. Scherrer and the Hausfeld team have successfully overcome arguments before the trial court and on appeal related to U.S. jurisdiction

and are in the midst of discovery, which involves substantial foreign discovery through the Hague Convention and navigating foreign data privacy issues. Settlements to date total $680 million.

Through her work, Ms. Scherrer has garnered a national reputation for excellence. She has been named a "Litigation Trailblazer & Pioneer" and "Antitrust Litigation Star" by the *National Law Journal*, and a "Leading Plaintiff Financial Lawyer" by *Lawdragon*. *Who's Who Legal* named her a "Thought Leader" in competition law and noted she "has wide-ranging experience in antitrust litigation in the U.S. and is regarded as one of the leaders in the field." *The Legal 500* praised her as "a smart strategic thinker" who is "friendly, engaging and spot-on."

Michael Hausfeld, one of the nation's preeminent civil litigators, will also be a key member of the Hausfeld team. Over the course of his five-decade career, Mr. Hausfeld has successfully prosecuted numerous global cartel cases, including cases that resulted in ground-breaking international settlements, historic trial victories, and landmark Supreme Court decisions. As the first U.S.-based claimant-side attorney to open offices in Europe, he has been at the forefront of efforts to enforce competition laws globally. In recognition of his remarkable career, he was recently bestowed a Lifetime Achievement Award by the ABA as well as by *Global Competition Review*.

Along with Mr. Hausfeld and Ms. Scherrer, Scott Martin, a partner and head of Hausfeld's New York office, will bring the added perspective of significant experience litigating and trying antitrust cases on the defense side, while Jeannine, Kenney, a partner and recognized expert in all aspects and phases of e-discovery, and Katie Beran, a New Jersey barred antitrust partner, will provide their support and expertise as needed from their Philadelphia home base. Hausfeld has a deep bench of other antitrust attorneys, including partners, associates, and staff attorneys available to work on the case, and the firm is willing to commit the personnel and financial resources necessary to litigate this case to a successful conclusion. Hausfeld's firm resume is attached as Exhibit 3 to the Cecchi Declaration.

### 4.      Carella Byrne and James E. Cecchi

Mr. Cecchi has worked closely with each of the proposed lead counsel on numerous complex class actions over the last 15 years including antitrust cases, securities cases and consumer cases. Because of his work with them - both as co-lead counsel and liaison counsel - Mr. Cecchi has developed the trust and confidence of each firm such that they all agreed to work with him and develop the proposed leadership structure. The history of working successfully together - and the independent experiences Carella Byrne brings to the team - certainly enhance the strength of the leadership slate proposed to the Court.

Indeed, Mr. Cecchi has been appointed as Lead Counsel, Co-Lead Counsel and Executive Committee member in some of the most important class actions in the Country over the last ten years.  These include:

- *In re: Liquid Aluminum Sulfate Antitrust Litig.*, MDL No. 2687 (D.N.J.) (Hon. Jose L. Linares) (Direct purchaser Antitrust case on behalf of municipalities and paper mills regarding price fixing claims arising from the sale of chemicals utilized in water treatment and paper production. James Cecchi appointed as Sole Lead Counsel and secured a settlements greater than $100,000,000.)

- *In re: Mercedes-Benz Emissions Litig.*, Civil Action No. 16-cv-881 (D.N.J.) (Hon. Kevin McNulty) (James Cecchi appointed as Co-Lead Counsel for Plaintiffs and the Class in a case arising out of the alleged use of a defeat device to evade U.S. emissions regulations; settlement with value in excess of $800,000,000 granted final approval in July 2021.)

- *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 (N.D. Cal.) (Hon. Charles R. Breyer) (James Cecchi appointed to Steering Committee and as Settlement Class Counsel; settlement in excess of $15,000,000,000 for consumer fraud and warranty claims arising from the use of a defeat device to evade U.S. emissions regulations.)

- *In re: Takata Airbag Prods. Liab. Litig.*, MDL No. 2599 (S.D. Fla.) (Hon. Frederico A. Moreno) (James Cecchi appointed to six-firm Steering Committee and as Settlement Class Counsel; settlement in excess of $1,500,000,000 for consumer fraud and warranty claims arising from use of defective and dangerous airbags; the case is ongoing as it pertains to second-wave defendants, including Mercedes Benz USA.)

- *In re: Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, MDL No. 2904 (D.N.J.) (Hon. Madeline Cox Arleo) (Multi-defendant data breach where James Cecchi is Sole Lead Counsel.)

- *In re Samsung Customer Data Security Breach Litig.*, MDL No. 3055 (D.N.J.) (Hon. Christine P. O'Hearn) (James E. Cecchi appointed Sole Lead Counsel.)

22

- *In re National Prescription Opiate Litig.*, MDL No. 2804 (N.D. Ohio) (Hon. Dan A. Polster) (James Cecchi appointed to Plaintiffs' Executive Committee relating to marketing of opioid drugs. Settlements in excess of $50 billion dollars now being distributed to cities and towns across the United States to abate the Opioid epidemic.)

- *In Re: Vytorin/Zetia Marketing, Sales Practices & Prods. Liab. Litig.* MDL No. 1938 (D.N.J.) (Hon. Dennis M. Cavanaugh) (James E. Cecchi Co-lead counsel for class in case arising out of the marketing of drug Vytorin; settlement of $41,500,000 secured for consumer class.)

- *In re Schering-Plough/Enhance Sec. Litig.*, Civil Action No.: 08-cv-397 (D.N.J.) (Hon. Dennis M. Cavanaugh)

- *In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*, Civil Action No. 08-cv-2177 (D.N.J.) (Hon. Dennis M. Cavanaugh) (securities fraud claims arising from marketing and sale of anti-cholesterol drugs Vytorin and Zetia) (Co-Lead Counsel in Consumer Cases and Co-Liaison Counsel in Securities Cases which collectively settled for $688,000,000.)

- *In Re Effexor XR Antitrust Litig.*, Civil Action No. 11-cv-5661 (D.N.J.) (Hon. Joel A. Pisano) (claims on behalf of indirect purchasers of brand-name drug alleging that manufacturer obtained patent by fraud and enforced patent by sham litigation to maintain illegal monopoly of brand-name drug. James Cecchi appointed as Chair of Plaintiffs' Indirect Purchaser Executive Committee.)

- *Davis Landscape v. Hertz Equip. Rental*, Civil Action No. 06-cv-3830 (D.N.J.) (Hon. Dennis M. Cavanaugh) (Co-Lead Counsel in settlement valued at over $50,000,000 on behalf of contested nationwide class asserting claims that HERC's loss/damage waiver charges violated the New Jersey Consumer Fraud Act because it provides no benefit to customers.)

- *In Re: Merck & Co., Inc., Sec., Derivative & "ERISA" Litig.*, MDL No. 1658 (D.N.J.) (Hon. Stanley R. Chesler) (securities fraud claims arising from Merck's failure to disclose problems with commercial viability of anti-pain drug Vioxx which settled for more than $1,000,000,000. James E Cecchi appointed as Sole Liaison Counsel for the Class.)

23

- *In re: Mercedes-Benz Tele-Aid Contract Litig.*, MDL No. 1914 (Hon. Dickson R. Debevoise) (Co-Lead Counsel in $40,000,000 settlement of consumer fraud claims arising from Mercedes' failure to notify Tele-Aid customers of mandated change from analog to digital system and charging customers to replace system Mercedes knew would be obsolete.)

Carella Byrne's firm resume is attached as Exhibit 4 to the Cecchi Declaration.

### E.   The Proposed Leadership Have Long Demonstrated Their Ability to Work Cooperatively, Professionally, and Respectfully with Each Other

The three firms and the attorneys have proven track record of their ability and commitment to work cooperatively, professionally, and respectfully with each other in large, high-stakes antitrust actions.  The proposed leadership group have worked together and collectively recovered billions of dollars on behalf of plaintiffs in antitrust actions.  For example, members of the Korein Tillery team in this matter have worked cooperatively and successfully with Hausfeld attorneys and NLG attorneys in the FX Litigation and recovered more than $2.3 billion on behalf of foreign exchange investors.  Similarly, members of Carella Byrne worked together with NLG to bring about the successful resolution of *In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 2:16-md-02687-MCA-MAH (D.N.J.).  These are but a couple examples of the myriad times the firms in the proposed leadership group have successfully worked together.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court appoint Linda Nussbaum of Nussbaum Law Group, P.C., Christopher Burke of Korein Tillery, PC, and Hilary Scherrer of Hausfeld LLP as Interim Class Counsel, and James E. Cecchi of Carella Byrne as Liaison Counsel.

DATED:      June 30, 2023              Respectfully Submitted,

**CARELLA, BRYNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.**

_____

James E. Cecchi
Kevin G. Cooper
Zachary S. Bower
5 Becker Farm Road
Roseland, NJ 07068
Tel: (973) 994-1700
jcecchi@carellabyrne.com
kcooper@carellabyrne.com
zbower@carellabyrne.com

Christopher M. Burke
Walter Noss
Yifan (Kate) Lv
**KOREIN TILLERY PC**
707 Broadway, Suite 1410
San Diego, CA 92101
Tel: (619) 6225-5620
cburke@koreintillery.com
wnoss@koreintillery.com
klv@koreintillery.com

Hilary K. Scherrer
**HAUSFELD LLP**
888 16th Street N.W., Suite 300
Washington, DC 20006

25

United States
Tel: (202) 540-7156
hscherrer@hausfeld.com

Linda P. Nussbaum
**NUSSBAUM LAW GROUP, P.C.**
1211 Avenue of the Americas, 40th Floor
New York, NY 10036
Tel: (917) 438-9189
lnussbaum@nussbaumpc.com