James E. Cecchi
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700
jcecchi@carellabyrne.com

*Attorneys for Plaintiff and the Proposed Class*

[Additional counsels appear on signature page.]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: FRAGRANCE DIRECT PURCHASER ANTITRUST LITIGATION | Civil Action No.: 23-2174 (WJM)(JSA) |

**REPLY BRIEF IN SUPPORT OF THE PROPOSSED LEADERSHIP GROUP'S MOTION FOR APPOINTMENT INTERIM CLASS COUNSEL AND LIAISON COUNSEL FOR THE DIRECT PURCHASER CLASS AND <u>OPPOSITION TO MARKET ALLOCATION GROUP'S CROSS-MOTION</u>**

Plaintiffs Our Own Candle Company, Inc., Candle Shoppe of the Poconos, Inc., B&E Associates, Inc., Demeter F.L., Inc., and Hanna's Candle Company respectfully submit this reply brief in further support of their motion under Fed. R. Civ. P. 23(g) for the appointment of Linda Nussbaum of Nussbaum Law Group, P.C. ("NLG"), Christopher Burke of Korein Tillery, P.C. ("Korein Tillery"), and Hilary Scherrer of Hausfeld LLP ("Hausfeld") as "Interim Class Counsel," and James E. Cecchi of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. ("Carella Byrne") as "Liaison Counsel" (collectively, the "Proposed Leadership Group") (ECF No. 32) and in opposition to the "Market Allocation Group's" cross-motion for appointment (ECF No. 44).

I.  INTRODUCTION

The attorneys and firms comprising the Proposed Leadership Group are some of the most well-respected and successful antitrust litigators in the country and are eminently qualified to lead this case. The Proposed Leadership Group also brings case-specific resources to bear, including counsel with extensive knowledge and experience in this Court, counsel with European offices, and counsel with expertise in chemistry. In anticipation of filing a consolidated amended complaint, the Proposed Leadership Group members privately organized the leadership of this action and have jointly continued their investigation. The group has been working together cooperatively and efficiently to move the case forward and will continue to

1

do so if appointed Co-Lead Counsel.

Reflecting the level of respect for its members and confidence in their ability to lead this case, the Proposed Leadership Group is supported by more than a dozen law firms representing six of the seven Plaintiffs that have filed complaints in this action. Notably, a number of these firms and their attorneys are qualified to lead this case in their own right, but chose to support the Proposed Leadership Group instead. *See* Declaration of Robert A. Liebenberg[1] and Declaration of Candice J. Enders in Support of the Motion for Appointment of Interim Class Counsel and Liaison Counsel.[2]

In an attempt to distinguish itself and portray its investigation as more advanced, the self-styled Market Allocation Group wholly mischaracterizes the Proposed Leadership Group's complaints. Contrary to its assertions, however, the Proposed Leadership Group's complaints allege several means by which Defendants unreasonably restrained trade, including price-fixing, market allocation, and coordinated supply constraints. Such allegations are consistent with the scope of the governmental investigations disclosed to date.

The Market Allocation Group, on the other hand, ostensibly claims to have staked this case on a single theory of unspecified market allocation, asserting that its

---

[1] Attached hereto as Exhibit A.
[2] *See* ECF No. 45-1.

case theory is purportedly more plausible and easier to prove. The Market Allocation Group then requests that the Court base its leadership appointment on a determination about the supposedly differing degrees of plausibility of the competing complaints. Such pre-judging of the alleged misconduct prior to any formal discovery is simply not supported by Rule 23(g), the MANUAL FOR COMPLEX LITIGATION, or any case law. Nor is it in the best interests of the putative class.

Given the Proposed Leadership Group's plaintiff-side antitrust expertise, extensive work investigating and organizing this action to date, their willingness not to prematurely foreclose theories of relief, and the case-specific resources they bring to the table, the Proposed Leadership Group respectfully submits that they will best represent the interests of the putative class in this case.  For these reasons, the Proposed Leadership Group respectfully asks the Court to grant their motion.

## II.   ARGUMENT

### A.   Appointment Of The Proposed Leadership Group Is In The Best Interests Of The Class

When more than one adequate applicant is seeking appointment as interim class counsel, the Court must "appoint the applicant best able to represent the interests of the class." F.R.C.P. 23(g)(2).

### 1. The Proposed Leadership Group Has Been Leading and Coordinating Work on the Plaintiffs' Side Since the First-Filed Complaint

Each of the firms in the Proposed Leadership Group actively investigated and developed the class claims, including but not limited to conducting a number of lengthy interviews of market participants and industry experts. Their efforts resulted in the filing of four complaints against Defendants between April and June. Supported by detailed facts from their proprietary investigations, the complaints allege Defendants artificially increased prices, in violation of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3), by various means, including price-fixing, market allocation, and supply constraints.

Since joining forces, the Proposed Leadership Group has worked together efficiently and cooperatively to continue the work their respective firms commenced individually. The Proposed Leadership Group has continued to investigate and develop potential case theories on behalf of the direct purchaser class for the longest class period that is supported by the known facts and governing law. Based on their ongoing investigations, including consultation with Plaintiffs, absent class members, and economic and industry experts, members of the Proposed Leadership Group have developed more information related to their claims.[3]

---

[3] If deemed appropriate based on its investigation and analysis, the Proposed Leadership Group will add those factual allegations when the time comes for filing the Consolidated Complaint, as set forth in the parties' Consolidation Stipulation. The Proposed Leadership Group notes, however,

In addition to jointly continuing to investigate the case, as encouraged by the MANUAL FOR COMPLEX LITIGATION, FOURTH, §10.22, the Proposed Leadership Group also coordinated to move the case forward, by, among other things: (1) organizing and leading conferences among plaintiffs' counsel regarding case management; (2) initiating service of process under the Hague Convention on foreign defendants; (3) negotiating an agreement regarding service of the foreign Defendants; (4) drafting an ESI Protocol and Protective Order; (5) working with other counsel for direct purchaser plaintiffs and Defendants to file a stipulation to consolidate the six actions for all purposes; (6) drafting a consolidated complaint; and (7) coordinating with Hausfeld's attorneys in London and Germany regarding developments there.

For months, the Proposed Leadership Group has been leading the efforts and coordinating resources to best represent the putative class. This cooperation exemplifies the skilled management and efficiency that the Proposed Leadership Group will employ in leading this case. There is no need to disrupt what is already working.

---

that Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," and respectfully posits that the complaints have pled more than enough at this point to overcome a motion to dismiss.

## 2. The Proposed Leadership Group Members Are Eminently Qualified To Lead This Case And Bring Case-Specific Resources

The Proposed Leadership Group members each have decades of experience focused on price-fixing, market allocation, and supply constraint cases.[4] As leaders in the field who have successfully resolved other substantial antitrust class cases, including in the chemical additives industry, the Proposed Leadership Group has a demonstrated history of successfully prosecuting this type of case successfully through motion to dismiss, discovery, class certification, summary judgment, and trial. As demonstrated by their repeated appointments by federal courts throughout the country to lead complex antitrust cases, the Proposed Leadership Group attorneys and firms have earned the confidence of those courts as being capable of effectively managing, resolving, and if necessary, trying complex antitrust class actions.

Ms. Nussbaum, for example, has served as Lead or Co-Lead counsel in over 25 direct purchaser antitrust class actions in jurisdictions throughout the United

---

[4] Additional relevant cases not explicitly addressed in the Consensus Group's opening brief include *In re Domestic Airline Travel Antitrust Litig.*, No. No. 15-mc-1404-CKK (D.D.C.), a supply restraint case led by Ms. Scherrer and Mr. Hausfeld, with settlements totaling $60 million to date and *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-cv-20000-RDP (N.D. Ala.), a market allocation led by Mr. Hausfeld and Megan Jones of Hausfeld, which recently settled for $2.67 million.

States, including this District.[5] More specifically, she has been appointed to the leadership of numerous antitrust class actions alleging anticompetitive activity in the chemical additives industry, where a number of those cases, like this one, had parallel criminal proceedings. Over the years, she has developed expertise in handling those matters and the rather unique challenges that those cases can present in discovery and class certification. Many of her cases have involved foreign defendants and international investigations.

Mr. Burke has similarly been appointed lead counsel in many high-stakes and complex antitrust class actions and his work has been widely honored by the legal industry. Collectively, Mr. Burke recovered over $10 billion on behalf of class members. Mr. Burke also has extensive trial experiences. He was lead trial counsel in *In re Foreign Exchange Benchmark Rates Antitrust Litig*., No. 13-cv-7789 (S.D.N.Y) and one of the trial counsel in *Schwartz v. Visa*, No. 822505-4 (Alameda Cty. Super. Ct.) ($780 million plaintiff's judgment after six months of trial). Mr. Burke has been recognized three times (2014, 2018, and 2020) by the American Antitrust Institute for exemplary work in private enforcement of the antitrust law.

---

[5] In fact, Ms. Nussbaum opened and managed the New York Office, led the antitrust practice and was a member of the very small executive committee of the predecessor firm of both Cohen Milstein Sellers & Toll and Hausfeld LLP, while successfully leading some of the largest antitrust cases ever brought. Nussbaum Law Group is staffed by five very experienced class action and antitrust practitioners. The Proposed Leadership Group is the team of experienced antitrust practitioners.

Ms. Scherrer has over two decades of experience leading and litigating antitrust class actions, including cases that have resulted in ground-breaking legal precedent. Her efforts in various cases have led to the recovery of over $2 billion for victims of anticompetitive conduct. Through her work, Ms. Scherrer has garnered a national reputation for excellence and has been named a "Litigation Trailblazer & Pioneer" and "Antitrust Litigation Star" by the *National Law Journal*, and a "Leading Plaintiff Financial Lawyer" by *Lawdragon*. As the Global Competition Review recently proclaimed, "the lawyers at Hausfeld have established themselves as one of—if not the—top plaintiffs' antitrust firm in the US."

While Ms. Nussbaum of NLG, Mr. Burke of Korein Tillery, and Ms. Scherrer of Hausfeld are proposed to lead this case, additional attorneys at the firms that comprise the Proposed Leadership Group, such as Michael Hausfeld, Rosemarie Fiorillo, and Jim Cecchi, bring unique experiences and perspectives and will play key roles in the litigation of the case.

Mr. Hausfeld is one of the nation's preeminent civil litigators. Over the course of his five-decade career, Mr. Hausfeld has successfully prosecuted numerous global cartel cases, including cases that resulted in ground-breaking international settlements, historic trial victories, and landmark Supreme Court decisions. As the first U.S.-based claimant-side attorney to open offices in Europe, Mr. Hausfeld has been at the forefront of efforts to enforce competition laws globally.  In recognition

of his remarkable career, he was recently bestowed a Lifetime Achievement Award by the ABA, as well as by *Global Competition Review*.

Ms. Fiorillo has an extensive background in chemistry and biochemistry, which is particularly well-suited to the present case in the chemical industry. She is a member of the Society of Toxicology, a professional and scholarly organization of scientists from academic institutions, government, and industry representing the great variety of scientists who practice toxicology in the United States and abroad. Ms. Fiorillo has published original scientific research with the herbicides paraquat, atrazine, and 2,4-D and has an extensive background in environmental engineering. She also understands the chemistry of natural products, as well as their synthetic production. Ms. Fiorillo has extensive experience of working with experts in chemical related cases.

Mr. Cecchi stepped back from seeking a co-lead position to serve as Liaison Counsel. He has practiced in this District for over 25 years, founded his firm's class action practice, and has led numerous complex cases. Directly relevant to the claims in this case, he has been lead counsel in important antitrust class actions in this District, including *In re Liquid Aluminum Sulfate,* which involved bid rigging and market allocation, *Castro v. Sanofi*, in which he was the principal architect of the $61.5 settlement, and *In re Effexor Antitrust Litigation*, a long running action involving allegations that the manufacturer of Effexor suppressed generic

competition through a reverse-payment scheme.[6] His experience in the District and specific antitrust work make him eminently well-suited to serve as liaison counsel in this case.

The Proposed Leadership Group has access to a team of experienced competition attorneys in Hausfeld's London and Germany (Berlin and Düsseldorf) offices, where governmental investigations of the Defendants are ongoing. Hausfeld is one of the leading law firms in both the United Kingdom and Germany for antitrust and competition litigation and a pioneer of antitrust damages actions in Europe. Attorneys in the London and Germany offices represent clients in complex competition law disputes before the European courts, the European Commission, and national antitrust authorities.

The Proposed Leadership Group will also be able to leverage the skills of the highly regarded antitrust attorneys at other firms who support the appointment of the Proposed Leadership Group, such as Roberta Liebenberg of Fine, Kaplan & Black and Candice Enders of Berger Montague, in a manner that will be in the best interests of the class.[7]

---

[6] Mr. Cecchi also led one of the largest consumer class actions in the nation against the nations' opioid manufacturers and distributors, resulting in settlements exceeding $50 billion.

[7] Ms. Liebenberg, for example, is one of the preeminent antitrust practitioners having, with her co-counsel in *In re Urethane Antitrust Litigation*, MDL No. 1616 (D. Kan.), secured a jury verdict of $400 million against the Dow Chemical Company. After trebling, the Court entered a judgment in excess of $1 billion. Liebenberg Decl., ¶ 6. Notably, this Court presided over one of the *Urethane* opt-out trials where Mr. Cecchi's firm was one of the counsel. Ms. Enders and her firm

This collective experience and access to these case-specific resources, as compared to that of the Market Allocation Group, which is composed primarily of securities and financial services practitioners, weighs strongly in favor of the Proposed Leadership Group.

### B. Other Factors Demonstrate the Proposed Leadership Group Will Best Represent the Interests of the Class

The Court may also consider also other factors that bear "counsel's ability to fairly and adequately represent the interest of the class." F.R.C.P. 23(g)(1)(B).

#### 1. The Proposed Leadership Group Will Pursue All Plausible Legal Theories to Maximize the Class' Recovery

Class counsel's "primary responsibility" is to represent the "best interests of the class." Fed. R. Civ. P. 23(g) advisory committee's note to 2003 amendment. The Proposed Leadership Group has done precisely that by alleging Defendants artificially increased prices by various means, including price-fixing, market allocation, and coordinated supply restrictions. More specifically, each of the Proposed Leadership Group's complaints alleges that the governmental investigations are focused on whether Defendants "coordinated their pricing policy, prohibited their competitors from supplying certain customers and limited the

---

have similarly secured notable victories in antirust class actions in this District including in *Castro v. Sanofi Pasteur, Inc.*, 11-7178 (D.N.J.) ($61.5 million settlement) and *In re K-Dur Antitrust Litig.*, No. 01-cv-1652 (D.N.J.) obtaining over $60 million in settlements and a favorable Third Circuit opinion (*In re K-Dur Antitrust Litig.*, 686 F.3d 197 (3d Cir. 2012)). Enders Decl., at ¶¶ 8-9.

production of certain fragrances."[8] The Our Own Candle, Demeter, Hanna's Candle, and Cospro complaints also allege that Defendants belonged to trade associations that provide a pretext under which co-conspirators can exchange sensitive information, such as pricing, and allocate markets. Our Own Candle Compl., ¶¶ 46-50; Demeter Compl., ¶ 76; Hanna's Candles Compl., ¶ 77; Cospro Compl., ¶ 77.[9] And the B & E complaint explicitly alleges: "To protect their profitability, Defendants secretly coordinated with each other on their pricing policy for customers, allocated certain customers, and coordinated supply restraints for Fragrances." B & E Compl., ¶ 6.

In an attempt to distinguish itself, the Market Allocation Group appears to have forsworn any intent to pursue a price-fixing theory on behalf of the putative class, asserting that its market allocation theory is "more plausible" and is "a much simpler cartel to prove." ECF No. 44-1, at 8, 11. This limited and self-serving approach, which involves pre-judgment of the evidence prior to any formal

---

[8] *See also Cospro Development Corp. v. International Flavors & Fragrances Inc. et al.*, No. 2:23-cv-03368-WJM-JBC, ECF No. 1 at ¶ 4 (D.N.J. June 20, 2023); *Demeter F.L., Inc. v. International Flavors & Fragrances Inc.*, No. 2:23-cv- 3265-WJM-JBC, ECF No. 1 at ¶ 4 (D.N.J. June 14, 2023); *Hannas Candle Company v. International Flavors & Fragrances Inc.*, No. 2:23-cv- 3266-WJM-JBC, ECF No. 1 at ¶ 4 (D.N.J. June 14, 2023); *B & E Associates, Inc. v. Firmenich S.A. et al.*, Case No. 2:23-cv-03050-WJM-JBC, ECF No. 1 at ¶ 5 (D.N.J. June 2, 2023). *Candle Shop of the Poconos, Inc. v. Givaudan S.A. et al.*, No. 2:23-cv-03049-WJM-JBC, ECF No. 1 at ¶ 4 (D.N.J. June 2, 2023); *Our Own Candle Company, Inc. v. Givaudan S.A.*, No. 2:23-cv-02174-WJM-JBC, ECF No. 1 at ¶ 4 (D.N.J. Apr. 18, 2023).

[9] The Market Allocation Group mistakenly claims that the first complaint filed by Our Own Candle "did not allege market allocation" in its rush to file. Yet such allegations are included in paragraph 1, as well as paragraph 83.

discovery and a simplistic view of proof in antitrust cases, is not in the best interests of the class as market allocation is but one element of a multifaceted conspiracy that allowed Defendants to charge supracompetitive prices for their fragrance products.

Unlike the Market Allocation Group, the Proposed Leadership Group declines to take a position as to which means of unreasonably retraining trade is "more plausible" at this stage of the litigation as taking such a position is neither sound legal strategy nor in the best interests of the class. Instead, the Proposed Leadership Group will pursue and develop *all* plausible theories and make necessary adjustments based on evidence obtained through discovery as the case proceeds. Nor is it in the best interests of the class for the Court to determine which allegations are more plausible at this stage.

In fact, the purportedly differing degrees of plausibility between complaints prior to the filing of a consolidated amended complaint is not a factor for consideration in leadership appointments under Rule 23(g) or the MANUAL FOR COMPLEX LITIGATION. The Market Allocation Group has cited no authority in support of its position, and the Proposed Leadership Group is not aware of any other court having considered plausibility at this stage of the litigation. Accordingly, the Proposed Leadership Group respectfully requests that the Court should not undertake such a determination.

The Proposed Leadership Group's approach seeks to maximize class members' recoveries and avoids the need to make premature and substantive decisions on the merits of class members' claims before discovery has even started.

### 2. The Proposed Leadership Group Will Litigate The Case Efficiently

The Proposed Leadership Group's proposed leadership structure is reasonably small while, at the same time, providing Plaintiffs and the putative class with the necessary human and financial capital to properly prosecute this action against four multi-national defendants with operations that span the globe, represented by large, well-resourced defense firms. Courts regularly appoint three or more co-lead counsel in complex antitrust cases such as this one.[10]

Importantly, the Proposed Leadership Group will litigate the case efficiently and economically, using their vast experience and background in similar cases to do so here. If appointed, the Proposed Leadership Group shall implement a timekeeping and cost reporting protocol as well as fee caps for certain tasks, such as document review. Should the Court request it, the Proposed Leadership Group will provide *in*

---

[10] *In re Valve Antitrust Litig.*, No. 21-cv-0563, 2022 WL 3346392 (W.D. Wash. Aug. 12, 2022) (appointing four co-leads); *In re Da Vinci Surgical Robot Antitrust Litig.*, No. 3:21-cv-03825-AMO, ECF No. 54 (N.D. Cal. Sept. 24, 2021) (appointing three co-leads); *In re Treasury Securities Auction Antitrust Litig.*, 2017 WL 10991411 (S.D.N.Y. Aug. 23, 2017) (appointing three co-leads); *In re National Football League "Sunday Ticket" Antitrust Litig.*, No. 2:15-ml-02668-BRO, ECF No. 148 (C.D. Cal. June 8, 2016) (appointing four co-leads); *In re Disposable Contact Lens Antitrust Litig.*, 2015 WL 10818781 (M.D. Fl. Oct. 7, 2015) (appointing three co-leads); *In re Municipal Derivatives Antitrust Litig.*, 252 F.R.D. 184 (S.D.N.Y. Aug. 1, 2008) (appointing three co-leads).

*camera* submissions of time records for the Court's review on a regular basis. Moreover, pursuant to Local Civil Rule 7.1.1, the Proposed Leadership Group firms represent that their case is not being underwritten by litigation funders, and thus, they are not beholden to any outside interest.

In sum, the Proposed Leadership Group will efficiently and independently litigate this case, devoting the resources necessary to ensure the success of this case on behalf of the putative class.

### III. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court appoint Linda Nussbaum of Nussbaum Law Group, P.C., Christopher Burke of Korein Tillery, PC, and Hilary Scherrer of Hausfeld LLP as Interim Class Counsel, and James E. Cecchi of Carella Byrne as Liaison Counsel.

DATED:    July 31, 2023             Respectfully Submitted,

**CARELLA, BRYNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**

/s/James E. Cecchi_____
James E. Cecchi
Kevin G. Cooper
Zachary S. Bower
5 Becker Farm Road
Roseland, NJ 07068
Tel: (973) 994-1700
jcecchi@carellabyrne.com
kcooper@carellabyrne.com
zbower@carellabyrne.com

15

Christopher M. Burke
Walter Noss
Yifan (Kate) Lv
**KOREIN TILLERY PC**
707 Broadway, Suite 1410
San Diego, CA 92101
Tel: (619) 6225-5620
cburke@koreintillery.com
wnoss@koreintillery.com
klv@koreintillery.com

Hilary K. Scherrer
Michael D. Hausfeld**HAUSFELD LLP**
888 16th Street N.W., Suite 300
Washington, DC 20006
United States
Tel: (202) 540-7156
hscherrer@hausfeld.com
mhausfeld@hausfeld.com

Linda P. Nussbaum
**NUSSBAUM LAW GROUP, P.C.**
1211 Avenue of the Americas, 40th Floor
New York, NY 10036
Tel: (917) 438-9189
lnussbaum@nussbaumpc.com

16