UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: FRAGRANCE DIRECT PURCHASER ANTITRUST LITIGATION | Civil Action No. 23-cv-02174 (WJM) (JSA) |
| IN RE: FRAGRANCE INDIRECT PURCHASER ANTITRUST LITIGATION | Civil Action No. 23-cv-3249 (WJM) (JSA) |
| IN RE: FRAGRANCE END-USER PLAINTIFF ANTITRUST LITIGATION | Civil Action No. 23-cv-16127 (WJM) (JSA) **ORAL ARGUMENT REQUESTED** *Document electronically filed* |

**DEFENDANT GIVAUDAN SA'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED AMENDED CLASS ACTION COMPLAINTS
<u>FOR LACK OF PERSONAL JURISDICTION</u>**

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..............................................................................1

I.  STATEMENT OF FACTS ..........................................................................3

    A.  Plaintiffs' Complaints and Their Jurisdictional Allegations................3

    B.  Givaudan SA Has No U.S. Contacts that Could Support a
    Finding of Personal Jurisdiction in this Case ........................................5

II.  LEGAL STANDARD ...................................................................................7

III.  ARGUMENT................................................................................................8

    A.  Givaudan SA Is Not Subject to General Jurisdiction in This
    Court.........................................................................................................9

    B.  Givaudan SA Is Not Subject to Specific Jurisdiction in This
    Court.......................................................................................................11

        1.  The CACs Do Not, and Cannot, Allege that Givaudan SA
        Purposefully Directed Any Activities at New Jersey or
        the United States ......................................................................12

        2.  Plaintiffs Do Not Sufficiently Allege that Their Claims
        Arise Out of Givaudan SA's Activities in New Jersey or
        the United States. .....................................................................15

        3.  Exercising Personal Jurisdiction Over Givaudan SA
        Would Not Comport with Fair Play and Substantial
        Justice......................................................................................16

    C.  Givaudan SA Is Not Subject to Personal Jurisdiction Through
    the Acts of Its Subsidiaries...................................................................18

CONCLUSION ...................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Aegean Marine Petroleum Network, Inc*.,
529 F. Supp. 3d 111 (S.D.N.Y. 2021) ................................................................12

*In re Auto. Refinishing Paint Antitrust Litig*.,
358 F.3d 288 (3d Cir. 2004) ..............................................................................8

*Bukuvalas* v. *CIGNA Corp*.,
No. 10-0710, 2010 WL 5055811 (D.N.J. Dec. 3, 2010) ...................................18

*In re Bulk [Extruded] Graphite Prods. Antitrust Litig*.,
No. 02-6030, 2004 U.S. Dist. LEXIS 29586 (D.N.J. Oct. 26, 2004)................10

*In re Bulk [Extruded] Graphite Prods. Antitrust Litig*.,
No. 02-6030, 2006 WL 1084093 (D.N.J. Apr. 24, 2006) .................................14

*Calder* v. *Jones*,
465 U.S. 783 (1984).........................................................................................13

*Chassen* v. *Fid. Nat'l Fin., Inc*.,
Civ. Action No. 09-291, 2009 WL 4508581 (D.N.J. Nov. 16, 2009)...............11

*Chavez* v. *Dole Food Co.*,
836 F.3d 205 (3d Cir. 2016) ...........................................................................1, 9

*Colida* v. *LG Elecs., Inc*.,
No. 02-4947, 2003 U.S. Dist. LEXIS 26818 (D.N.J. Apr. 28, 2003) ...............16

*Daimler AG* v. *Bauman*,
571 U.S. 117 (2014)........................................................................................1, 9

*In re Diisocyanates Antitrust Litig*.,
No. 18-1001, 2020 WL 1140245 (W.D. Pa. Mar. 9, 2020)...............................14

*Eaton Corp.* v. *Maslym Holding Co*.,
929 F. Supp. 792 (D.N.J. 1996).......................................................................17

*Fisher* v. *Teva PFC SRL*,
212 F. App'x 72 (3d Cir. 2006) .......................................................................11

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Ford Motor Co.* v. *Montana Eighth Judicial Dist. Court*,
  592 U.S. 351 (2021).............................................................................7, 11

*Goodyear Dunlop Tires Operations., S.A.* v. *Brown*,
  564 U.S. 915 (2011).............................................................................9, 10

*Harrison* v. *Nerveda, LLC*,
  No. 15-1373,
  2015 WL 5138478 (D.N.J. Aug. 31, 2015) ............................................13

*IMO Indus., Inc.* v. *Kiekert AG*,
  155 F.3d 254 (3d Cir. 1998) ..........................................................8, 13, 14

*Int'l Shoe Co.* v. *State of Washington*,
  326 U.S. 310 (1945)............................................................................8, 16

*Jovanovic* v. *United States Olympic & Paralympic Comm.*,
  No. 22-2098, 2023 WL 7179298 (D.N.J. Mar. 31, 2023).............7, 10, 12

*Keeton* v. *Hustler Magazine, Inc.*,
  465 U.S. 770 (1984)....................................................................................7

*LaSala* v. *Marfin Popular Bank Pub. Co., Ltd.*,
  410 F. App'x 474 (3d Cir. 2011) ..............................................................20

*Levy* v. *Jaguar Land Rover N. Am., LLC*,
  No. 19-13497, 2020 WL 563637 (D.N.J. Feb. 4, 2020)...........................19

*Lucas* v. *Gulf & Western Indus., Inc.*,
  666 F.2d 800 (3d Cir. 1981) .......................................................................2

*Lutz* v. *Rakuten, Inc.*,
  376 F. Supp. 3d 455 (E.D. Pa. 2019).........................................................20

*O'Connor* v. *Sandy Lane Hotel Co.*,
  496 F.3d 312 (3d Cir. 2007) ........................................................11, 16, 17

*Rush* v. *Savchuk*,
  444 U.S. 320 (1980).............................................................................2, 18

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Smith* v. *S&S Dundalk Engineering Works, Ltd.*,
  139 F. Supp. 2d 610 (D.N.J. 2001) ....................................................19

*Telcordia Techs., Inc.* v. *Alcatel S.A.*,
  No. 04-874, 2005 WL 1268061 (D. Del. May 27, 2005) ....................16

*Time Share Vacation Club* v. *Atl. Resorts, Ltd.*,
  735 F.2d 61 (3d Cir. 1984) ...................................................................7

*Transp. Ins. Co.* v. *Am. Harvest Baking Co.*,
  No. 15-663, 2015 WL 9049273 (D.N.J. Dec. 16, 2015) ....................19

*Truinject Corp.* v. *Nestlé*,
  No. 19-592-LPS-JLH, 2020 WL 1270916 (D. Del. Mar. 17, 2020) .................12

*UHS of Del.* v. *United Health Servs.*,
  No. 1:12-CV-00485,
  2013 U.S. Dist. LEXIS 196349 (M.D. Pa. Mar. 26, 2013) .................19

*Value Drug Co.* v. *Takeda Pharms., U.S.A., Inc.*,
  No. 21-3500, 2021 WL 6125355 (E.D. Pa. Dec. 28, 2021) ................19

*Victory Int'l* v. *Perry Ellis Int'l*,
  No. 07-0375, 2008 WL 65177 (D.N.J. Jan. 2, 2008) .........................17

*Wade* v. *Kenan Advantage Grp.*,
  No. 20-18155, 2021 WL 4704962 (D.N.J. Oct. 8, 2021)....................10

*Walburn* v. *Rovema Packaging Machs., L.P.*,
  No. 07-3692, 2008 WL 852443 (D.N.J. Mar. 28, 2008) ....................13

*Waste Mgmt., Inc.* v. *The Admiral Ins. Co.*,
  138 N.J. 106 (1994) ............................................................................18

*Zelma* v. *Burke*,
  No. 2:16-02559-CCC-MF, 2017 WL 58581 (D.N.J. Jan. 4, 2017)....................12

## <u>TABLE OF AUTHORITIES</u>
### (Continued)

<u>Page(s)</u>

**Statutes and Rules**

Fed. R. Civ. P. 12(b)(2)..............................................................................1, 7

Fed. R. Civ. P. 12(g) ...................................................................................1

Fed. R. Civ. P. 12(h) ...................................................................................1

N.J. Ct. R. 4:4-4 .........................................................................................8

U.S. Const. Amend. XIV .............................................................................8

Defendant Givaudan SA, by and through its undersigned counsel, respectfully submits this memorandum of law in support of its Motion to Dismiss the Consolidated Amended Class Action Complaints ("CACs") for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).[1]

## PRELIMINARY STATEMENT

This Court lacks personal jurisdiction over Givaudan SA, a Swiss holding company that has no relevant U.S. activities or contacts. For that reason alone, Givaudan SA should be dismissed from each of the three putative class actions.

*First*, Givaudan SA is not subject to general jurisdiction because it is incorporated and has its principal place of business outside of the United States, in Switzerland. Under binding Supreme Court and Third Circuit precedent, that essentially ends the inquiry. *Daimler AG* v. *Bauman*, 571 U.S. 117, 137 (2014); *Chavez* v. *Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016). Plaintiffs do not— and cannot—show that Givaudan SA has such extensive contacts with New Jersey or the United States that this is the "exceptional case," *Daimler*, 571 U.S. at 139 n.19, permitting the exercise of general jurisdiction outside of the corporation's place of incorporation or principal place of business.

---

[1] In accordance with Rules 12(g) and 12(h) of the Federal Rules of Civil Procedure, and without waiver of its personal jurisdiction objections, Givaudan SA also joins in the Omnibus Motion to Dismiss the Consolidated Amended Class Action Complaints of Direct Purchaser Plaintiffs, Indirect Purchaser Plaintiffs, and End-User Plaintiffs that is likewise being filed on April 8, 2024.

*Second*, this Court cannot exercise specific jurisdiction over Givaudan SA because Plaintiffs do not adequately allege any connection between Givaudan SA, the forum, and their specific claims. As an initial matter, Plaintiffs rely on improper group pleading—lumping together Givaudan SA and legally distinct subsidiaries into a single entity Plaintiffs misleadingly define as "Givaudan" and all foreign and domestic Defendants into an undifferentiated group of "Defendants." This failure to allege relevant, non-conclusory jurisdictional acts by Givaudan SA is fatal to Plaintiffs' claims. Moreover, Plaintiffs' vague and conclusory allegations do not suffice to support personal jurisdiction because they do not allege any suit-related conduct by Givaudan SA that targeted, or had a substantial effect on, New Jersey or the United States.

*Third*, Plaintiffs cannot impute to Givaudan SA the alleged jurisdictional contacts of domestic subsidiaries. The requirements of personal jurisdiction must be met with regard to each defendant individually. *Rush* v. *Savchuk*, 444 U.S. 320, 332 (1980); *Lucas* v. *Gulf & Western Indus., Inc.*, 666 F.2d 800, 805–06 (3d Cir. 1981) ("a foreign corporation is not subject to the jurisdiction of the forum state merely because of its ownership of the shares of stock of a subsidiary doing business in the state"). Plaintiffs allege no facts to suggest that it is appropriate here to pierce the corporate veil and subject Givaudan SA to personal jurisdiction merely because it has indirect ownership interests in U.S. subsidiaries.

## I.      STATEMENT OF FACTS

### A.      Plaintiffs' Complaints and Their Jurisdictional Allegations

Defendants[2] are producers of fragrance ingredients and compounds (collectively, "Fragrance Products").  *See* Direct Purchaser Plaintiffs' Consolidated Complaint, *In Re: Fragrance Direct Purchaser Antitrust Litig*., No. 23-cv-02174, ECF No. 107, ¶¶ 1, 20–32 ("DPP CAC").  Plaintiffs purport to represent classes of those who purchased:  (i) Fragrance Products directly from certain unspecified Defendants for use in consumer goods (*id*. ¶¶ 186–87); (ii) Fragrance Products other than directly from Defendants for use in consumer goods (*see* Producer Indirect Purchaser Plaintiffs' Consolidated Class Action Complaint, *In Re: Fragrance Indirect Purchaser Litig*., No. 23-cv-03249, ECF No. 43, ¶¶ 235–36 ("IPP CAC")); and (iii) consumer products containing Fragrance Products manufactured by Defendants (*see* End User Plaintiffs' Consolidated Class Action Complaint, *In Re: Fragrance End-User Plaintiff Antitrust Litig.*, No. 23-cv-16127, ECF No. 38 ¶¶ 242–43 ("EUP CAC")).  Plaintiffs allege that from January 1, 2018 through the present, unidentified individuals affiliated with Defendants "acted in

---

[2]     Defendants are International Flavors and Fragrances Inc. ("IFF"); Givaudan SA, Givaudan Fragrances Corporation, Ungerer & Company, Inc., and Custom Essence LLC (which Plaintiffs collectively define as "Givaudan"); DSM-Firmenich AG, Firmenich International SA, Firmenich SA, Firmenich Inc., and Agilex Flavors & Fragrances, Inc. (which Plaintiffs collectively define as "Firmenich"); and Symrise AG, Symrise Inc., and Symrise US LLC (which Plaintiffs collectively define as "Symrise").

concert to fix, raise, maintain, and stabilize the price of [Fragrance Products] manufactured, sold, distributed, or imported into the United States." DPP CAC ¶ 105; IPP CAC ¶ 135; EUP CAC ¶ 159.

Plaintiffs' jurisdictional allegations concerning Givaudan SA are limited to a single paragraph in their respective CACs describing the company's Swiss residence and purported U.S. activities through domestic subsidiaries and affiliates:

> Defendant Givaudan SA is a Swiss corporation that manufactures and sells flavors and fragrances. Givaudan SA is headquartered at Chemin de la Parfumerie 5, 1214 Vernier, Switzerland. Givaudan SA is listed on the SIX Swiss Exchange under the ticker symbol GIVN. Givaudan SA has extensive operations throughout the United States, either directly or through its wholly-owned and controlled subsidiaries and affiliates. During the Class Period, Givaudan SA manufactured and/or sold Fragrance Products to purchasers in the United States and elsewhere, directly or through predecessors, affiliates, or subsidiaries.

DPP CAC ¶ 21; EUP CAC ¶ 76; *see also* IPP CAC ¶ 34. In addition, Plaintiffs allege that Givaudan SA controls or operates its U.S. subsidiaries—Defendants Givaudan Fragrances, Ungerer, and Custom Essence—"both generally and with respect to the conduct of [its subsidiaries] in furtherance of the unlawful acts alleged in this Complaint." DPP CAC ¶¶ 22–24; EUP CAC ¶¶ 77–79; *see also* IPP CAC ¶¶ 35–37. Plaintiffs also attribute certain corporate statements about prices and profits made in earnings calls and investor presentations to "Givaudan" and Givaudan SA interchangeably. *See, e.g.*, DPP CAC ¶¶ 80, 118, 120, 133, 143,

150; IPP CAC ¶¶ 110, 148, 150, 163, 173, 180; EUP CAC ¶¶ 134, 173, 175, 188, 198, 205.

The CACs' other jurisdictional allegations are mere boilerplate and refer only to "Defendants" generally:

> This Court has personal jurisdiction over Defendants because, *inter alia*: a portion of the wrongdoing alleged in this Consolidated Complaint took place in this District; Defendants are authorized to do business in this District and systematically and continuously conduct business in this District; Defendants have sufficient minimum contacts with the United States, including this District; and Defendants otherwise intentionally avail themselves of the markets in this District through the promotion and marketing of its Fragrances in this District; Defendants engaged in anticompetitive conduct that was directed at and had the foreseeable and intended effect of causing injury to residents and businesses residing or located in this District. These facts render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

IPP CAC ¶ 52; *see also* EUP CAC ¶ 14.  Plaintiffs further allege that "[e]ach Defendant acted as the principal, agent, or joint venture of, or for, other Defendants with respect to the acts, violations, and common course of conduct alleged by Plaintiffs."  DPP CAC ¶ 35; IPP CAC ¶ 49; EUP CAC ¶ 90.  The foregoing are the sum total of allegations regarding Givaudan SA's purported contacts with New Jersey and/or the United States.

**B.    Givaudan SA Has No U.S. Contacts that Could Support a Finding of Personal Jurisdiction in this Case**

Givaudan SA is a public limited company (*société anonyme*) organized under the laws of Switzerland, with its principal place of business in Vernier,

Switzerland.  Declaration of Roberto Garavagno, dated April 8, 2024 ("Garavagno Decl."), ¶ 3.  As its public filings make clear, "Givaudan SA is a holding company . . . whose main goal is to manage its investments in subsidiaries."[3]  It has no operational activities; instead, its business consists primarily of the ownership of interests in a variety of entities that manufacture, distribute, and sell Fragrances and Fragrance Products.  Garavagno Decl. ¶ 8 & Ex. A.  Givaudan SA does not have employees and is managed by a team of officers and directors not located in the United States.  *Id*. at ¶ 9.  It does not manufacture, distribute, or contract for the sale and supply of Fragrances or Fragrance Products in the United States.  It has no operations, sales, locations, offices, mailing addresses, telephone listings, or bank accounts in the United States, and it does not itself own or operate any of the 22 "Givaudan" locations in the United States referenced in the IPPs' CAC.  *Id*. at ¶¶ 8, 10–12; IPP CAC ¶ 34.

Contrary to Plaintiffs' allegations, Givaudan SA does not control its U.S. subsidiaries or direct their day-to-day operations.  *Compare* DPP CAC ¶¶ 22–24; EUP CAC ¶¶ 7–9, *with* Garavagno Decl. ¶ 14.  Nor is Givaudan SA involved in sales or marketing of Fragrances or Fragrance Products in the United States.  *Id.* ¶ 12.  Those efforts are managed by its subsidiaries, which are distinct corporate

---

[3]    *See* Ex. A to Garavagno Decl., Givaudan 2020 Governance, Compensation, and Financial Report at 104, available at https://www.givaudan.com/files/giv-2020-gcfr.pdf.

entities and maintain separate books and records from Givaudan SA. *Id.* ¶¶ 12–14. In short, Givaudan SA has no meaningful contacts with New Jersey or the United States.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) requires dismissal when the Court lacks personal jurisdiction over the defendant.  To survive a motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of demonstrating contacts with the forum state sufficient to give the court in personam jurisdiction." *Time Share Vacation Club* v. *Atl. Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984). "[T]he plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Id.* at 66 n.9.

 "Each defendant's contacts with the forum State must be assessed individually." *Keeton* v. *Hustler Magazine, Inc*., 465 U.S. 770, 781 n.13 (1984). Plaintiffs may not rely on allegations that do not differentiate among defendants to establish personal jurisdiction. *Jovanovic* v. *United States Olympic & Paralympic Comm.*, No. 22-2098, 2023 WL 7179298, at *8 (D.N.J. Mar. 31, 2023).  These principles apply to both types of personal jurisdiction recognized by the Supreme Court: general jurisdiction and specific jurisdiction.  *See Ford Motor Co.* v. *Montana Eighth Judicial Dist. Court*, 592 U.S. 351, 358–59 (2021).

New Jersey's long-arm statute, N.J. Ct. R. 4:4-4, authorizes the exercise of personal jurisdiction "to the fullest limits of due process." *IMO Indus., Inc.* v. *Kiekert AG,* 155 F.3d 254, 259 (3d Cir. 1998).   Under the Fourteenth Amendment's Due Process Clause, a nonresident defendant may be subject to personal jurisdiction only if the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co.* v. *State of Washington*, 326 U.S. 310, 316 (1945) (internal quotation omitted).  Thus, for Plaintiffs' state law claims, the Court assesses whether Givaudan SA has minimum contacts with New Jersey. For Plaintiffs' federal antitrust claims, personal jurisdiction "is assessed on the basis of a defendant's aggregate contacts with the United States as a whole." *In re Auto. Refinishing Paint Antitrust Litig*., 358 F.3d 288, 298 (3d Cir. 2004).

## III.   ARGUMENT

Plaintiffs do not plead a *prima facie* case for exercising personal jurisdiction over Givaudan SA under any theory of jurisdiction.  Givaudan SA is a foreign holding company that is not "at home" in New Jersey or the United States, and thus it is not subject to general jurisdiction.  Givaudan SA is similarly not subject to specific personal jurisdiction because Plaintiffs fail to connect any in-forum contacts by Givaudan SA to their claims.  To the contrary, the CACs contain deficient boilerplate jurisdictional allegations about Givaudan SA, undifferentiated

members of the "Givaudan" corporate family, and Defendants in general, without any non-conclusory allegations that Givaudan SA manufactured, sold, or distributed Fragrances or Fragrance Products in the United States or took any action that targeted the United States or U.S. consumers.  Significantly, too, in this putative price-fixing case, nowhere do Plaintiffs allege that Givaudan SA had *any role* in setting prices for Fragrance Products manufactured or distributed by subsidiaries in the United States or abroad.

### A.    Givaudan SA Is Not Subject to General Jurisdiction in This Court

General jurisdiction is appropriate only when a defendant's "affiliations with the [forum] are so 'continuous and systematic' as to render [it] essentially at home in the forum[.]"  *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 564 U.S. 915, 919 (2011).  As the Third Circuit has noted, "it is incredibly difficult to establish general jurisdiction [over a corporation] in a forum *other* than the place of incorporation or principal place of business."  *Chavez*, 836 F.3d at 223 (alteration and emphasis in original).  It is only the "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home[.]"  *Daimler*, 571 U.S. at 139 n.19.

This is not the "exceptional case."  Givaudan SA is a foreign corporation—organized under the laws of Switzerland, headquartered in Switzerland, and listed

on the Swiss Stock Exchange,[4] DPP CAC ¶ 21; IPP CAC ¶ 34; EUP CAC ¶ 76—

meaning that in order to establish general jurisdiction, Plaintiffs must allege facts

suggesting that Givaudan SA has conducted business so "continuous and

systematic" as to render it at home in the United States. *Goodyear*, 564 U.S. at

919. The CACs do not come close to doing so. Instead, Plaintiffs allege only that

Givaudan SA has "extensive operations throughout the United States either

directly or through its wholly-owned and controlled subsidiaries and affiliates" and

"manufactured and/or sold Fragrance Products to purchasers in the United States

directly or through predecessors, affiliates, or subsidiaries." DPP CAC ¶ 21; EUP

CAC ¶ 76. As a matter of law, such conclusory allegations that a defendant had

"substantial operations" or sold products in the forum do not confer general

jurisdiction.[5] *See, e.g.*, *Wade* v. *Kenan Advantage Grp.*, No. 20-18155, 2021 WL

4704962, at *2 (D.N.J. Oct. 8, 2021) (conclusory allegations that defendant

---

[4]   Givaudan SA stock also trades over-the-counter in the United States under the
      tickers GVDNY and GVDBF. But mere listing of a security for sale in the
      United States does not confer general jurisdiction. *In re Bulk [Extruded]
      Graphite Prods. Antitrust Litig.*, No. 02-6030, 2004 U.S. Dist. LEXIS 29586, at
      *20–21 (D.N.J. Oct. 26, 2004) ("The listing of [defendant's] securities on the
      NYSE is not enough to establish [general] jurisdiction, nor are the routine
      activities such as distribution of dividends or required filings with the SEC that
      stem from that listing.").

[5]   Plaintiffs' attempts to muddy the waters by alleging that Givaudan SA acted
      "through" its United States subsidiaries (DPP CAC ¶ 21; EUP CAC ¶ 76) are
      unavailing because personal jurisdiction must be analyzed as to each defendant
      individually. *Jovanovic*, 2023 WL 7179298, at *8.

"engaged in business within the State of New Jersey on a regular systemic, continuous and substantial basis and has purposefully established significant contacts within New Jersey" insufficient to confer personal jurisdiction); *Chassen* v. *Fid. Nat'l Fin., Inc*., Civil Action No. 09-291, 2009 WL 4508581, at *3 (D.N.J. Nov. 16, 2009) (dismissing foreign defendants alleged only to be "leading providers of insurance" that conducted business in New Jersey through subsidiaries); *see also Fisher* v. *Teva PFC SRL*, 212 F. App'x 72, 75–77 (3d Cir. 2006) (foreign defendants' domestic distribution contract, visits to forum, and past in-forum sales did not establish continuous and systematic contacts with forum).

## B.      Givaudan SA Is Not Subject to Specific Jurisdiction in This Court

Specific jurisdiction exists only where "[t]he plaintiff's claims . . . 'arise out of or relate to the defendant's contacts' with the forum." *Ford Motor Co.*, 592 U.S. at 359.  To determine whether specific jurisdiction exists, courts employ a three-part test:  "First, the defendant must have purposefully directed its activities at the forum.  Second, the litigation must arise out of or relate to at least one of those activities.  And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice." *O'Connor* v. *Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (cleaned up).   "[S]peculative and conclusory allegations" are insufficient to support a finding of specific jurisdiction. *Zelma* v. *Burke*, No. 2:16-

02559-CCC-MF, 2017 WL 58581, at *3 (D.N.J. Jan. 4, 2017).   Plaintiffs'

allegations do not meet this test.

> **1.     The CACs Do Not, and Cannot, Allege that Givaudan SA Purposefully Directed Any Activities at New Jersey or the United States**

Plaintiffs fail to allege that Givaudan SA engaged in suit-related activity in

or purposefully directed *any* conduct at New Jersey or the United States.   As an

initial matter, Plaintiffs rely almost entirely on conclusory group pleading to allege

that "Defendants" as a whole, or all "Givaudan" entities, purposefully directed

activities at the United States.   *See, e.g.*, DPP CAC ¶ 21; EUP CAC ¶¶ 14, 76; IPP

CAC ¶¶ 34, 52.   But "because each defendant's contacts with the forum state must

be assessed individually," such group pleading is "improper" and should be

disregarded.   *Jovanovic*, 2023 WL 7179298, at *8.   *See also In re Aegean Marine*

*Petroleum Network, Inc*., 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021) ("To allege

personal jurisdiction over a defendant, group pleading is not permitted."); *Truinject*

*Corp.* v. *Nestlé*, No. 19-592-LPS-JLH, 2020 WL 1270916, at *3 (D. Del. Mar. 17,

2020) (dismissing foreign corporation for lack of personal jurisdiction where

plaintiffs collectively defined distinct corporate entities and failed to distinguish

among them).

Beyond this improper group boilerplate, nowhere do Plaintiffs plead any

suit-related activity by Givaudan SA that occurred in New Jersey or the United

States. While they attribute to Givaudan SA statements about pricing and profits during earnings calls and investor presentations, *see, e.g.,* DPP CAC ¶¶ 80, 118, 120, 133, 143, 150; IPP CAC ¶¶ 110, 148, 150, 163, 173, 180; EUP CAC ¶¶ 134, 173, 175, 188, 198, 205, Plaintiffs never explain where such statements were made, or what, if any, connection they had to the United States. In no way does this establish requisite minimum contacts. *See Harrison* v. *Nerveda, LLC*, No. 15-1373, 2015 WL 5138478, at *6 (D.N.J. Aug. 31, 2015) (no personal jurisdiction where plaintiff "failed to specify the locations from which the parties conducted" relevant communications, and "the Court will not speculate as to their whereabouts"); *Walburn* v. *Rovema Packaging Machs., L.P.*, No. 07-3692, 2008 WL 852443, at *1 n.2 (D.N.J. Mar. 28, 2008) (no personal jurisdiction where plaintiffs failed to allege "where these [suit-related actions] took place").

Plaintiffs also do not adequately allege that Givaudan SA "intentionally targeted at and focused on the forum." *IMO Indus.*, 155 F.3d at 265 (cleaned up). Under the "effects test" for specific jurisdiction set forth in *Calder* v. *Jones*, 465 U.S. 783, 789–90 (1984), a plaintiff must allege "acts undertaken by the defendant which demonstrate that he 'expressly aimed' his tortious conduct at the United States, and defendant knew that plaintiff would suffer the brunt of the harm in the United States. In so doing, the plaintiffs may not rely on the bare pleadings alone, but must cite evidence to support their claim." *In re Bulk [Extruded] Graphite*

13

*Prods. Antitrust Litig.*, No. 02-6030, 2006 WL 1084093, at *8 (D.N.J. Apr. 24, 2006).  Plaintiffs cite no such evidence.

To the contrary, the CACs barely mention Givaudan SA, let alone allege that Givaudan SA intentionally targeted or made "some type of 'entry' into the forum[.]"  *IMO Indus.*, 155 F.3d at 265 (cleaned up).  Instead, Plaintiffs allege only that Givaudan SA "manufactured and/or sold Fragrance Products to purchasers in the United States and elsewhere, directly or through predecessors, affiliates, or subsidiaries" and that "Defendants" engaged in anticompetitive conduct that caused injury to residents and businesses in this District.  DPP CAC ¶ 21; IPP CAC ¶¶ 34, 52; EUP CAC ¶¶ 14, 76.  But in an alleged antitrust conspiracy case, that a defendant sold, through its subsidiaries, products in the forum that were alleged to have been the subject of price fixing is not enough.  For example, in *In re Diisocyanates Antitrust Litig.*, plaintiffs alleged that (i) foreign defendants knowingly price-fixed a global commodity, (ii) which was then sold by defendants or their subsidiaries in the United States, (iii) causing harm to U.S. consumers.  *In re Diisocyanates Antitrust Litig.*, No. 18-1001, 2020 WL 1140245, at *5 (W.D. Pa. Mar. 9, 2020).  Concluding that it lacked specific jurisdiction over those foreign defendants, the court held that plaintiffs' "generalized reliance" on such allegations did "not allow th[e c]ourt to conclude that Defendants manifested behavior intentionally focused on the United States, or that jurisdiction lies under *Calder*."

14

*Id.*  So, too, here where Plaintiffs rely on general allegations about Defendants' purported conduct as a group and include not one allegation that Givaudan SA directed any conduct at New Jersey or the United States.  IPP CAC ¶ 52; EUP CAC ¶ 14.

> **2.**     **Plaintiffs Do Not Sufficiently Allege that Their Claims Arise Out of Givaudan SA's Activities in New Jersey or the United States.**

Givaudan SA's contacts with the United States, to the extent they exist at all, are unrelated to Plaintiffs' claims, which are premised on an alleged agreement among Defendants to fix prices for Fragrance Products, purportedly resulting in higher prices paid by Plaintiffs.  But Plaintiffs do not allege anything to suggest that Givaudan SA—as opposed to its operating subsidiaries—issued, or made the decision to issue, price increases here or abroad.  Nor is Givaudan SA alleged to have engaged in direct sales to any Plaintiff or U.S.-based person.  And as the Garavagno Declaration makes plain, Givaudan SA does not itself manufacture, distribute, or contract for the sale and supply of Fragrances or Fragrance Products in the United States or have any role in the sales or marketing of such products in the United States.  Garavagno Decl. ¶¶ 10–12.  Accordingly, Plaintiffs do not—and cannot—claim that their alleged injuries "arise out of or relate to" any in-forum

activities by Givaudan SA.[6]  *O'Connor*, 496 F.3d at 317; *Colida* v. *LG Elecs., Inc.*, No. 02-4947, 2003 U.S. Dist. LEXIS 26818, at *10–11 (D.N.J. Apr. 28, 2003) (dismissing foreign defendant that "conducts no business in New Jersey, does not solicit customers in New Jersey, does not maintain any offices in New Jersey, and does not have any employees in New Jersey" because plaintiff failed to show "the instant litigation results from injuries that arise out of or relate to [] activities in New Jersey").

### 3.   Exercising Personal Jurisdiction Over Givaudan SA Would Not Comport with Fair Play and Substantial Justice

Finally, exercising specific jurisdiction over Givaudan SA would offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co.*, 326 U.S. at 316.  To assess this last prong of the three-prong test for specific jurisdiction, a court may consider "the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in

---

[6]   To the extent Plaintiffs argue Givaudan SA is subject to specific jurisdiction because its stock trades over-the-counter in the United States, such contacts are plainly irrelevant to Plaintiffs' claims.  *Telcordia Techs., Inc.* v. *Alcatel S.A.*, No. 04-874, 2005 WL 1268061, at *1, 6 (D. Del. May 27, 2005) (noting that "[u]nless the contacts are continuous and systematic, they must be related to the present cause of action" and finding defendant's listing on New York Stock Exchange "unrelated" to present litigation).

16

furthering substantive social policies." *Victory Int'l* v. *Perry Ellis Int'l*, No. 07-0375, 2008 WL 65177, at *4 (D.N.J. Jan. 2, 2008).

These factors weigh against the exercise of specific jurisdiction here. "[T]he burden on the defendant is a 'primary concern' in any case, […] and it is all the more significant here due to the unique burdens placed upon one who must defend oneself in a foreign legal system." *O'Connor*, 496 F.3d at 324 (cleaned up). Requiring Givaudan SA, a Swiss holding company with no locations, sales, or employees in the United States, to litigate in this forum would pose a significant burden on the company and its ordinary-course operations. *See Eaton Corp.* v. *Maslym Holding Co.*, 929 F. Supp. 792, 799 (D.N.J. 1996) (finding burden on defendants that had no offices, employees, or presence in United States "severe"). Moreover, Plaintiffs, this forum, and the interstate system have no special interest in Givaudan SA's participation in this litigation, which likely will hinder the efficient administration of justice. Plaintiffs' interest is even further diminished as they will not be prejudiced by Givaudan SA's dismissal: If their claims survive Defendants' 12(b)(6) motion, Plaintiffs may continue to litigate against, and potentially obtain relief from, the domestic defendants, including U.S.-based subsidiaries of Givaudan SA.

C.    **Givaudan SA Is Not Subject to Personal Jurisdiction Through the Acts of Its Subsidiaries**

The jurisdictional contacts of Givaudan SA's U.S. subsidiaries are not a basis to exercise jurisdiction over Givaudan SA. Even if the Court has personal jurisdiction over those domestic entities, "the requirements of *International Shoe* . . . must be met as to each defendant." *Rush*, 444 U.S. at 332; *accord Waste Mgmt., Inc.* v. *The Admiral Ins. Co.*, 138 N.J. 106, 127 (1994) ("[J]urisdiction over one defendant may not be based on the activities of another defendant[.]"); *Bukuvalas* v. *CIGNA Corp.*, No. 10-0710, 2010 WL 5055811, at *3 (D.N.J. Dec. 3, 2010) ("'A district court may not exercise jurisdiction over a defendant corporation if the only connection with the state is through that defendant's subsidiaries.'") (quoting *Alexander* v. *CIGNA Corp.*, 991 F. Supp. 427, 443 (D.N.J. 1998)).

Plaintiffs provide no reason why the conduct of indirect domestic subsidiaries should be imputed to Givaudan SA for purposes of personal jurisdiction. Their conclusory allegations that Givaudan SA "controls" these U.S. subsidiaries are woefully inadequate to twice pierce the corporate veil and thereby obtain personal jurisdiction over Givaudan SA. DPP CAC ¶¶ 22–24; EUP CAC ¶¶ 77–79. Likewise, Plaintiffs' bald legal assertions that "[e]ach Defendant acted as the principal, agent, or joint venture of, or for, other Defendants" cannot confer jurisdiction. DPP CAC ¶ 35; IPP CAC ¶ 49; EUP CAC ¶ 90. Plaintiffs' failure to plead any facts supporting these legal conclusions is reason enough to disregard

the allegations. *Levy* v. *Jaguar Land Rover N. Am., LLC*, No. 19-13497, 2020 WL 563637, at *5 (D.N.J. Feb. 4, 2020) ("[T]he Complaint provides no facts to support its alter ego theory. [...] Plaintiffs' allegations are merely conclusory."); *Value Drug Co.* v. *Takeda Pharms., U.S.A., Inc.*, No. 21-3500, 2021 WL 6125355, at *22 (E.D. Pa. Dec. 28, 2021) (rejecting unsubstantiated arguments on personal jurisdiction).

Indeed, Plaintiffs must allege far more than mere control of indirect subsidiaries to impute their contacts to a corporate parent. They must show that the parent "so dominated and controlled" the subsidiaries "that their existence was a 'mere sham.'" *Smith* v. *S&S Dundalk Engineering Works, Ltd.*, 139 F. Supp. 2d 610, 620–21 (D.N.J. 2001); *Transp. Ins. Co.* v. *Am. Harvest Baking Co.*, No. 15-663, 2015 WL 9049273, at *5 (D.N.J. Dec. 16, 2015) (holding that "in 'an ordinary holding company/subsidiary relationship, not one of undue domination and control,' there is no alter ego relationship") (citation omitted). So long as corporate formalities are maintained, the forum of the subsidiary is not imputed to the parent, no matter the nature of parent control of the subsidiary. *UHS of Del.* v. *United Health Servs.*, No. 1:12-CV-00485, 2013 U.S. Dist. LEXIS 196349, at *17 (M.D. Pa. Mar. 26, 2013) ("If a parent and subsidiary continue to respect traditional corporate boundaries by maintaining, for example, their own bylaws, articles of incorporation, and boards of directors, the subsidiary will not be deemed

to be the alter ego of the parent, no matter how much control the parent exercises.") (cleaned up).

Plaintiffs do not, and cannot, allege facts to the contrary. Givaudan SA is a holding company that maintains all corporate formalities with its U.S. subsidiaries, including separate books and records, and does not direct the day-to-day operations of its U.S. subsidiaries, which have their own management. Garavagno Decl. ¶¶ 13–14. On these facts, Plaintiffs cannot show control, much less an alter ego relationship that may render personal jurisdiction appropriate.[7] Put simply, "[t]here is no law to support that a global holding company bootstraps itself into personal jurisdiction merely by proclaiming to the world that it is a holding company for a complex of [] companies it does not otherwise control pursuant to the alter-ego theory." *Lutz* v. *Rakuten, Inc*., 376 F. Supp. 3d 455, 471 n.7 (E.D. Pa. 2019).

## CONCLUSION

For the foregoing reasons, Givaudan SA respectfully requests that this Court dismiss with prejudice Plaintiffs' claims against it for lack of personal jurisdiction.

---

[7] For similar reasons, Plaintiffs cannot establish specific jurisdiction through a conspiracy theory of jurisdiction, which neither the New Jersey Supreme Court nor the Third Circuit has recognized. *See LaSala* v. *Marfin Popular Bank Pub. Co., Ltd.*, 410 F. App'x 474, 478 (3d Cir. 2011) (noting that conspiracy jurisdiction is question of state law and "predict[ing] the New Jersey Supreme Court would decline to adopt such a theory of personal jurisdiction").

Dated:  April 8, 2024

By:   *s/ Kevin R. Reich*
　　　Kevin R. Reich

GIBBONS P.C.
One Gateway Center
Newark, New Jersey 07102
Tel: (973) 596-4755
kreich@gibbonslaw.com

Aidan Synnott (*pro hac vice*)
Eyitayo St. Matthew-Daniel (*pro hac vice*)
Hallie S. Goldblatt (*pro hac vice*)
PAUL, WEISS, RIFKIND,
WHARTON, & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Tel: (212) 373-3000
asynnott@paulweiss.com
tstmatthewdaniel@paulweiss.com
hgoldblatt@paulweiss.com

*Attorneys for Defendant Givaudan SA*