# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: FRAGRANCE DIRECT PURCHASER ANTITRUST LITIGATION** | Case No. 2:23-cv-02174-WJM-JSA |

## MEMORANDUM OF LAW IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH DEFENDANT INTERNATIONAL FLAVORS & FRAGRANCES, INC. AND PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS

James E. Cecchi
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Tel: (973) 994-1700
Fax: (973) 994-1744
jcecchi@carellabyrne.com

*Liaison Counsel for Direct Purchaser Plaintiffs*

[Additional Attorneys on Signature Page]

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

I.  INTRODUCTION ..................................................................................... 1

II.  FACTUAL AND PROCEDURAL HISTORY ....................................... 3

III.  THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ........... 7

   A.  The Standard and Procedures for Granting Preliminary Approval ................. 7

   B.  The Rule 23(e)(2) Factors are Likely to be Satisfied ................................... 10
     1.  Plaintiffs and Proposed Co-Lead Settlement Class Counsel Have Adequately Represented the Class ................................................................. 10
     2.  The Settlement Was Reached as a Result of Arm's Length Negotiations Assisted by an Experienced Mediator ............................................................ 11
     3.  The Settlement Provides Adequate Relief to the Settlement Class ........... 13
     4.  The Remaining Rule 23(e)(2) Factors Support Preliminary Approval ...... 18

IV.  THE DIRECT PURCHASER SETTLEMENT CLASS IS LIKELY TO BE CERTIFIED FOR SETTLEMENT PURPOSES ..................................................... 23

   A.  Rule 23(a) Is Satisfied ............................................................................... 24
     1.  Numerosity Is Satisfied ............................................................................ 24
     2.  Commonality Is Satisfied ......................................................................... 25
     3.  Typicality Is Satisfied .............................................................................. 26
     4.  Adequacy Is Satisfied .............................................................................. 27

   B.  Rule 23(b)(3) is Satisfied ........................................................................... 28

   C.  The Settlement Class Members Are Ascertainable ..................................... 30

   D.  Proposed Settlement Class Counsel Satisfy Rule 23(g) and Will Adequately Represent the Settlement Class ........................................................................... 32

V.  THE HUNTINGTON NATIONAL BANK IS QUALIFIED TO BE THE ESCROW AGENT ..................................................................................................... 33

VI.  PLAINTIFFS WILL SEEK APPROVAL OF A NOTICE PLAN AT A LATER DATE ............................................................................................................ 34

VII.  CONCLUSION ......................................................................................... 35

## TABLE OF AUTHORITIES

**Cases**

*Albert v. Glob. Tel\*link Corp.*,
No. 20-CV-01936, 2024 WL 4391866 (D. Md. Oct. 2, 2024)............................34

*Alves v. Main*,
No. 01-cv-789, 2012 WL 6043272 (D.N.J. Dec. 4, 2012)...................................12

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................ 24, 28, 29

*Bernhard v. TD Bank, N.A.*,
No. 08-cv-4392, 2009 WL 3233541 (D.N.J. Oct. 5, 2009).................................12

*Burrows v. DC Portfolio Servs., LLC*,
No. 22-cv-260, 2025 WL 2304797 (D.N.J. Aug. 11, 2025) ...............................10

*Byrd v. Aaron's, Inc.*,
784 F.3d 154 (3d Cir. 2015) .................................................................31

*Castro v. Sanofi Pasteur Inc.*,
No. 11-cv-7178, 2017 WL 4776626 (D.N.J. Oct. 23, 2017)...............................13

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .................................................................18

*City Select Auto Sales Inc. v. BMW Bank of N. Am., Inc.*,
867 F.3d 434 (3d Cir. 2017) .................................................................31

*Contant v. Bank of Am. Corp.*,
No. 17-cv-3139, 2019 WL 12276060 (S.D.N.Y. July 29, 2019) ........................35

*Curiale v. Lenox Grp., Inc.*,
No. 07-cv-1432, 2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) ..........................12

*Danvers Motor Co. v. Ford Motor Co.*,
543 F.3d 141 (3d Cir. 2008) .................................................................30

*Demaria v. Horizon Healthcare Servs., Inc.*,
No. 11-cv-7298, 2016 WL 6089713 (D.N.J. Oct. 18, 2016)...............................22

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010) ...............................................................................8

*Gates v. Rohm & Haas Co.*,
  248 F.R.D. 434 (E.D. Pa. 2008) .........................................................................15

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975)…………………………………….………10

*Hacker v. Elec. Last Mile Sols. Inc.*,
  No. 22-cv-00545, 2024 WL 5102696 (D.N.J. Nov. 6, 2024) .............................11

*Hays v. Eaton Grp. Att'ys, LLC*,
  No. 17-cv-88, 2019 WL 427331 (M.D. La. Feb. 4, 2019) ..................................20

*Holden v. Guardian Analytics, Inc.*,
  No. 23-cv-2115, 2024 WL 2845392 (D.N.J. Jun. 5, 2024)..................................22

*In re AremisSoft Corp. Sec. Litig.*,
  210 F.R.D. 109 (D.N.J. 2002) ............................................................................19

*In re Auto. Parts Antitrust Litig.*,
  No. 12-md-2311, 2017 WL 3499291 (E.D. Mich. July 10, 2017).......................17

*In re Broiler Chicken Antitrust Litig.*,
  No. 16-cv-08637, ECF No. 980 (N.D. Ill. June 22, 2018)..................................35

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ...............................................................................12

*In re Diet Drugs Prods. Liab. Litig.*,
  282 F.3d 220 (3d Cir. 2002) ...............................................................................20

*In re Domestic Airline Travel Antitrust Litig.*,
  322 F. Supp. 3d 64 (D.D.C. 2018)......................................................................35

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ............................................................................8, 12

*In re Healthec LLC Data Breach Litig.*,
  No. 24-cv-26, 2025 WL 1603267 (D.N.J. June 6, 2025)......................................7

*In re Ins. Brokerage Antitrust Litig.*,
  579 F.3d 241 (3d Cir. 2009) ...............................................................................29

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003)....................................................................18

*In re Local TV Advertising Antitrust Litig.*,
  No. 18-cv-6785, ECF No. 994 (N.D. Ill. Jun. 15, 2023)......................................35

*In re Lucent Techs., Inc., Sec. Litig.*,
  307 F. Supp. 2d 633 (D.N.J. 2004)........................................................................19

*In re Nat'l Football League Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016) ......................................................................... 26, 29

*In re Packaged Ice Antitrust Litig.*,
  No. 08-md-1952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011) .........................17

*In re Processed Egg Prod. Antitrust Litig.*,
  284 F.R.D. 249 (E.D. Pa. 2012) ............................................................... 15, 17, 19

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) .................................................................................27

*In re Remeron Direct Purchaser Antitrust Litig.*,
  No. 03-cv-0085, 2005 WL 3008808 (D.N.J. Nov. 9, 2005) .................................19

*In re Remeron End-Payor Antitrust Litig.*,
  No. 02-cv-2007, 2005 WL 2230314 (D.N.J. Sept. 13, 2005) ..............................13

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3d Cir. 2009) .................................................................................27

*In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*,
  No. 13-MD-2445, 2023 WL 8437034 (E.D. Pa. Dec. 4, 2023) .................... 22, 25

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ......................................................................... 8, 13, 29

*In re Wilmington Tr. Sec. Litig.*,
  10-cv-0990, 2018 WL 6046452 (D. Del. Nov. 19, 2018) .....................................14

v

*James v. Global Tel\*Link Corp.*,
No. 13-cv-04989, 2020 WL 6197511 (D.N.J. Oct. 22, 2020)..............................22

*Kress v. Fulton Bank, N.A.*,
No. 19-cv-18985, 2021 WL 9031639 (D.N.J. Sept. 17, 2021),
*R. & R. adopted*, 2022 WL 2357296 (D.N.J. June 30, 2022) ..............................8

*Kopchak v. United Res. Sys.*,
No. 13-cv-5884, 2016 WL 4138633 (E.D. Pa. Aug. 4, 2016) ............................21

*Lazy Oil, Co. v. Witco Corp.*,
95 F. Supp. 2d 290 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir. 1999) ...........16

*Lupian v. Joseph Cory Holdings*,
No. 16-cv-5172, 2019 WL 3283044 (D.N.J. Jul. 22, 2019)................................22

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012) .................................................... 24, 26, 31

*Martina v. L.A. Fitness Int'l, LLC*,
No. 12-cv-2063, 2013 WL 5567157 (D.N.J. Oct. 8, 2013)................................14

*Martinez-Santiago v. Public Storage*,
312 F.R.D. 380 (D.N.J. 2015) ...............................................................24

*Maverick Neutral Levered Fund, Ltd. v. Valeant Pharms. Int'l, Inc.*,
No. 20-cv-02190, 2021 WL 7872087 (D.N.J. Jan. 26, 2021) ..............................9

*McDonough v. Toys R Us, Inc.*,
80 F. Supp. 3d 626 (E.D. Pa. 2015)........................................................14

*McKinney v. U.S. Postal Serv.*,
292 F.R.D. 62 (D.D.C. 2013) ...............................................................35

*Mehling v. New York Life Ins. Co.*,
246 F.R.D. 467 (E.D. Pa. 2007) ............................................................12

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
315 F.R.D. 226 (E.D. Mich. 2016)..........................................................20

*Orozco v. Eli Timberland Tree Serv. LLC*,
No. 24-cv-7045, 2025 WL 2304894 (D.N.J. Aug. 11, 2025) ............................21

*Ortho-Clinical Diagnostics, Inc. v. Fulcrum Clinical Lab'ys, Inc.*,
No. 21-cv-2530, 2023 WL 3983877 (D.N.J. June 13, 2023) ................................. 8

*Pollak v. Portfolio Recovery Assocs., LLC*,
285 F. Supp. 3d 812 (D.N.J. 2018) .................................................................... 31

*Reyes v. Netdeposit, LLC*,
802 F.3d 469 (3d Cir. 2015) .............................................................................. 25

*Sheinberg v. Sorensen*,
606 F.3d 130 (3d Cir. 2010) .............................................................................. 27

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001) ......................................................................... 24, 26

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) ................................................................... 13, 25, 29

*Thomas v. NCO Fin. Sys., Inc.*,
No. 00-cv-5118, 2002 WL 1773035 (E.D. Pa. July 31, 2002) ........................... 15

*Tumpa v. IOC-PA, LLC*,
No. 18-cv-112, 2021 WL 62144 (W.D. Pa. Jan. 7, 2021) .................................. 21

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ......................................................................................... 28

*Vaccaro v. New Source Energy Partners L.P.*,
No. 15-cv-8954, 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ......................... 15

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ......................................................................................... 25

**Statutes**

Antitrust Criminal Penalty Enhancement and Reform Act ("ACPERA") .............. 17

Sherman Act, Sections 1 and 3 (15 U.S.C. §§ 1, 3) ......................................... 3, 25

**Rules**

Fed. R. Civ. P. 23(a) ............................................ 23, 24, 25, 26, 27, 28

Fed. R. Civ. P. 23(b) .................................................. 23, 24, 28, 30

Fed. R. Civ. P. 23(e).......................................................................................... *passim*

Fed R. Civ. P. 23(g) ................................................................................ 27, 32, 33

**Other Authorities**

7AA Wright, Miller, Kane, & Klonoff,
   Fed. Prac. & Proc. § 1788 (3d ed. 2005)............................................................35

Fed. R. Civ. P. 23, Advisory Committee's Note to 2018 Amendments........... 10, 20

Joshua P. Davis & Robert H. Lande, *Defying Conventional Wisdom:
   The Case for Private Antitrust Enforcement*, 48 Ga. L. Rev. 1, (2013).........16

William B. Rubenstein, 4 *Newberg on Class Actions* (5th Ed.)...............................9

## I.   INTRODUCTION

Direct Purchaser Plaintiffs[1] ("DPPs"), on behalf of themselves and the DPP Settlement Class, respectfully submit this Memorandum of Law in support of their Motion for Preliminary Approval of Settlement With Defendant International Flavors & Fragrances, Inc. and Provisional Certification of Settlement Class, ("Preliminary Approval Motion") seeking entry of an Order (1) preliminarily approving the settlement reached between DPPs, on behalf of themselves and the proposed settlement class, and Defendant International Flavors & Fragrances, Inc. ("IFF"),[2] as set forth in the Settlement Agreement dated October 16, 2025 (the "Settlement Agreement" or "Settlement"); (2) provisionally certifying the DPP Settlement Class for settlement purposes only and appointing Linda Nussbaum, Christopher Burke, and Hilary Scherrer as DPP Settlement Class Counsel; (3) staying the Action as to IFF pending final approval of the Settlement Agreement, except as may be necessary to implement the cooperation provisions set forth in the

---

[1] Direct Purchaser Plaintiffs are B & E Associates, Inc. (d/b/a Keystone Candle Company), Cospro Development Corp., Demeter F.L., Inc. (d/b/a Demeter Fragrance Library), Hanna's Candle Company, and Our Own Candle Company, Inc. (the "DPPs" or "Plaintiffs").

[2] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Settlement Agreement, which is attached as Exhibit A to the Declaration of Interim DPP Class Counsel in Support of Direct Purchaser Plaintiffs' Motion for Preliminary Approval of Class-Action Settlement, executed October 17, 2025 ("Joint Decl."), filed concurrently herewith.

1

Settlement Agreement or otherwise comply with the Settlement Agreement; (4) enjoining the prosecution of any Settlement Class Related Claims by Settlement Class Released Parties against any IFF Released Parties pending final approval of the Settlement Agreement; (5) appointing The Huntington National Bank as the Escrow Agent; and (6) directing DPPs to submit a motion to approve the form and manner of dissemination of notice to the members of the DPP Settlement Class (the "Notice Plan"), at an appropriate time, *i.e.*, following the timely receipt of the DPP Settlement Class data, and/or after DPPs have reached any additional settlements with the other defendants, in addition to IFF, and prior to DPPs moving for final approval of the Settlement Agreement. IFF supports entry of the Order.

DPPs reached this "icebreaker" Settlement Agreement after more than six months of extensive, arm's-length negotiations between experienced counsel for the DPPs and IFF under the supervision of the Hon. Layn Philips (Ret.), an experienced mediator and former federal district court judge. The proposed Settlement Agreement consists of (1) a monetary payment of $26,000,000; and (2) full and timely cooperation from IFF both in terms of effectuating the proposed Settlement and in providing information, documents, and testimony that will be of great aid in the continued prosecution of the litigation against the non-settling Defendants.

DPP Settlement Class Counsel and Liaison Counsel believe that the proposed Settlement is fair, reasonable and adequate, and an outstanding result that will

deliver significant benefits to the DPP Settlement Class immediately and continuing over the course of the litigation, while avoiding the risks and delays of continued litigation against IFF.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    Litigation History

This lawsuit arises from an alleged unlawful conspiracy to fix, raise, and/or maintain the prices for fragrance ingredients and compounds sold in the U.S. (collectively, "Fragrance Products") by Defendants in violation of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3).[3] Defendants are the world's largest producers of Fragrance Products. Collectively, they control approximately two-thirds of the U.S. fragrance market.

On March 7, 2023, the European Commission announced that it had carried out dawn raids at several suppliers and an industry association in the Fragrance Products industry in coordination with the United Kingdom's Competition and Markets Authority, the Swiss Competition Authority, and the U.S. Department of Justice Antitrust Division ("DOJ"). The raids were predicated on concerns that

---

[3] "Defendants" refers to IFF, DSM-Firmenich AG, Firmenich International SA, Firmenich SA, Firmenich Inc., Agilex Flavors & Fragrances, Inc., Givaudan SA, Givaudan Fragrances Corporation, Ungerer & Company, Inc., Custom Essence LLC, Symrise AG, Symrise Inc., and Symrise US LLC. "Non-Settling Defendants" refers to all Defendants except IFF.

certain Defendants had coordinated their pricing policy, prohibited their competitors from supplying certain customers and limited the production of certain fragrances. IFF subsequently disclosed that it had received a criminal grand jury subpoena.

On April 18, 2023, the first of several DPP actions was filed in this Court. Thereafter, additional DPPs filed actions in this Court, as did indirect purchaser plaintiffs ("IPPs") and end user plaintiffs ("EUPs"). On November 7, 2023, the Court ordered the consolidation of nine DPP cases into the present Action. ECF No. 72. On November 21, 2023, the Court appointed Linda Nussbaum of Nussbaum Law Group; Christopher Burke of Burke LLP (then of Korein Tillery); and Hilary Scherrer of Hausfeld LLP, as Interim Co-Lead Counsel. ECF No. 77.

The DPPs, IPPs, and EUPs filed their Consolidated Complaints on February 5, 2024 (the "Complaints"). ECF No. 107. In response, Defendants filed two sets of motions to dismiss the Complaints: (1) all Defendants moved pursuant to Rule 12(b)(6) to dismiss the Complaints on the grounds that they failed to adequately allege a conspiracy; and (2) Defendants DSM-Firmenich AG, Firmenich International SA, Firmenich SA, Symrise AG, and Givaudan SA ("Foreign Defendants") moved to dismiss pursuant to Rule 12(b)(2) on personal jurisdiction grounds. ECF Nos. 126, 136, 138, 140.

On February 21, 2025, the Court denied the Rule 12(b)(6) motion addressed to the DPPs, finding that the DPP Complaint plausibly alleged an anticompetitive

4

conspiracy. ECF No. 187. The Court also denied the Foreign Defendants' Rule 12(b)(2) motions, but without prejudice to renew the motions after the parties conduct jurisdictional discovery. ECF No. 185.

The Court stayed discovery on the merits pending discovery related to jurisdiction over the Foreign Defendants and any renewed Rule 12(b)(2) motions to dismiss. ECF Nos. 154, 193. The parties were in the midst of negotiations regarding jurisdictional discovery when the DOJ moved to intervene to ensure that discovery in the civil cases did not interfere with the government's criminal investigation of the Fragrance Products industry. The Court granted the DOJ's motion on June 20, 2025. ECF No. 216. Thereafter, the parties engaged in negotiations with the DOJ regarding a limited stay of discovery. They ultimately reached agreement, and on August 26, 2025, the Court entered the stipulation. ECF No. 230.

**B.    Settlement Negotiations and Resulting Agreement With IFF**

DPPs and IFF first explored the possibility of settlement in early 2025. Joint Decl. ¶ 25. In March 2025, the parties engaged in in-person negotiations mediated by the Hon. Layn R. Phillips. *Id.* ¶ 26. While the parties did not reach an agreement during the mediation, thereafter, they continued to negotiate through the mediator, as well as in direct communications, including email exchanges, telephonic communications, and video conference meetings. *Id.* The parties executed a term sheet setting forth an agreement in principle in August 2025. *Id.* ¶ 27. The parties

then engaged in additional arm's-length negotiations regarding the detailed terms of the settlement to reach a final Settlement Agreement, which was executed on October 16, 2025. *Id.*

Pursuant to the Settlement, IFF agrees to pay $26,000,000 for the benefit of the DPP Settlement Class. Ex. A, ¶ 1.kk. This Settlement Amount represents a substantial recovery for the DPP Settlement Class (as defined below). The proposed Settlement also requires that IFF provide substantial cooperation in assisting DPPs with prosecuting their action against the remaining Defendants, including: (1) a proffer of facts; (2) the production of transaction data; (3) the production of documents produced in government investigations and other documents related to the alleged conspiracy; (4) depositions of IFF personnel with knowledge relevant to the Consolidated Action; and (5) assistance at trial including testimony and/or authentication of documents. *Id.* ¶ 19. This cooperation is critical to the prosecution of this Action and is, therefore, a highly valuable undertaking by IFF.

In return, Plaintiffs and the DPP Settlement Class agree, among other things, to release claims against IFF that were or could have been brought in this Action arising from the conduct alleged in the Action. *Id.* ¶ 1.mm; ¶¶ 4-9. The release does not extend to any Non-Settling Defendants, and notably, the Settlement provides that the Non-Settling Defendants remain jointly and severally liable for IFF's sales to the extent permitted or authorized by law. *Id.* ¶ 11.

6

Subject to the Court's approval and direction, the proceeds from the Settlement, net of Court-approved attorneys' fees, litigation expenses, claims administration costs, and service awards for the class representatives (the "Net Settlement Fund"), will be distributed, at an appropriate time and to the extent economically feasible, to members of the DPP Settlement Class based upon a *pro rata* plan of allocation, itself based upon the amounts claiming DPP Settlement Class members paid to Defendants for Fragrance Products during the Settlement Class Period. As discussed in more detail below, such a *pro rata* distribution is fair and reasonable because it will compensate Settlement Class members commensurate with the degree of alleged harm suffered.

## III.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    The Standard and Procedures for Granting Preliminary Approval

"Approval of a class action settlement is a two-step process: (1) preliminary approval, and (2) a subsequent fairness hearing." *In re Healthec LLC Data Breach Litig.*, No. 24-cv-26, 2025 WL 1603267, at *3 (D.N.J. June 6, 2025). In this context, "preliminary approval is not binding and is granted unless the proposed settlement is obviously deficient." *Kress v. Fulton Bank, N.A.*, No. 19-cv-18985, 2021 WL 9031639, at *9 (D.N.J. Sept. 17, 2021), *R. & R. adopted*, 2022 WL 2357296 (D.N.J. June 30, 2022).

Courts within the Third Circuit have a "strong judicial policy in favor of class

action settlement." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593-95 (3d Cir. 2010).[4] "Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Ehrheart*, 609 F.3d at 595 (citation omitted). Settlement is particularly favored "in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'" *Id.* (*quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).

Rule 23(e)(2), amended in 2018, codified the factors a court must consider when determining the fairness of a class action settlement at preliminary approval. Specifically, the court must be satisfied that it "will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). If these requirements are satisfied, then notice of the proposed settlement will be disseminated to the class. Fed. R. Civ. P. 23(e)(1).

Federal Rule of Civil Procedure 23(e)(2) directs courts to consider whether:

---

[4] *See also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (recognizing an "overriding public interest in settling class action litigation"); *Ortho-Clinical Diagnostics, Inc. v. Fulcrum Clinical Lab'ys, Inc.*, No. 21-cv-2530, 2023 WL 3983877, at *3 (D.N.J. June 13, 2023) ("[I]n New Jersey, there is a strong public policy in favor of settlements . . . . Courts, therefore, will 'strain to give effect to the terms of a settlement whenever possible.'" (citations omitted)).

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). At preliminary approval, courts need only consider these factors for purposes of finding that they would "likely be able" to approve the proposed settlement. *See, e.g.*, *Maverick Neutral Levered Fund, Ltd. v. Valeant Pharms. Int'l, Inc.*, No. 20-cv-02190, 2021 WL 7872087, at \*5 (D.N.J. Jan. 26, 2021) ("[T]he Court is not certifying the class at the preliminary approval stage, but rather, is making a preliminary determination that it will likely be able to certify the class at the final approval stage.") (citing William B. Rubenstein, 4 *Newberg on Class Actions* § 13:17 (5th Ed.)).

In addition, courts in this circuit look to the traditional factors utilized in the Third Circuit—known as the "*Girsh* factors"—to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)):

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of

9

all the attendant risks of litigation.

*Burrows v. DC Portfolio Servs., LLC*, No. 22-cv-260, 2025 WL 2304797, at *9 (D.N.J. Aug. 11, 2025) (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)).

In sum, "[t]he central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendments. The proposed Settlement meets that standard.

### B.    The Rule 23(e)(2) Factors are Likely to be Satisfied

Each of the Rule 23(e)(2) factors is satisfied, so the Court may also find that they are "likely" to be satisfied on final approval under Rule 23.

### 1.    Plaintiffs and Proposed Co-Lead Settlement Class Counsel Have Adequately Represented the Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class."[5] This factor is easily met here.

"Representative plaintiffs provide adequate representation of a class where the 'named plaintiffs' interests are sufficiently aligned with' absent class members." *Hacker v. Elec. Last Mile Sols. Inc.*, No. 22-cv-00545, 2024 WL 5102696, at *7

---

[5] This factor overlaps significantly with the class certification analysis on adequacy. *See infra* at 28.

(D.N.J. Nov. 6, 2024) (citation omitted). Here, the named DPPs have no interests adverse or "antagonistic" to absent DPP Settlement Class members. DPPs are purchasers of Fragrance Products who seek to hold IFF and the other Defendants accountable for their anticompetitive behavior. Further, DPPs have demonstrated their allegiance and commitment to this litigation by consulting with DPP Interim Co-Lead Counsel, reviewing the pleadings, and keeping informed of the progress of the litigation. When called upon, DPPs have agreed to respond to discovery propounded by Defendants. Their interests are aligned with the interests of absent Settlement Class Members.

Furthermore, and as discussed more extensively in their lead counsel briefing and firm resumes submitted therewith, DPP Interim Co-Lead Counsel are qualified, experienced, and competent in complex class litigation and have successful track records with antitrust class cases as well as the ability to fund this litigation. *See* ECF No. 32 (motion to appoint interim class counsel), Nos. 32-1, 32-2, 32-3 (firm resumes). Accordingly, the requirement of adequate representation is satisfied.

### 2. The Settlement Was Reached as a Result of Arm's-Length Negotiations Assisted by an Experienced Mediator

Rule 23(e)(2)(B) evaluates whether the proposed settlement "negotiations occurred at arms length." *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir.

11

2001) (citing *In re General Motors*, 55 F.3d at 785).[6] Here, settlement negotiations were conducted over a period of more than six months and were arm's-length and hard-fought. *See* Joint Decl. ¶¶ 26, 30. The Settlement was negotiated by counsel with extensive experience in antitrust litigation, who were well-versed in the strengths and weaknesses of their respective clients' positions. *Id.* ¶¶ 21, 29-30. Further, negotiations took place under the supervision of a well-respected mediator, the Hon. Layn R. Phillips. *Id.* ¶¶ 9, 26.

Combined, these circumstances weigh heavily in favor of preliminary approval. *See Alves v. Main*, No. 01-cv-789, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." (quotations omitted)); *Bernhard v. TD Bank, N.A.*, No. 08-cv-4392, 2009 WL 3233541, at *2 (D.N.J. Oct. 5, 2009) (preliminarily approving settlement and noting that the proposed settlement, which was achieved with the assistance of a mediator, appeared to be the result of serious negotiation between the parties).

---

[6] *See also Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007); *Curiale v. Lenox Grp., Inc.*, No. 07-cv-1432, 2008 WL 4899474, at *4 (E.D. Pa. Nov. 14, 2008).

12

      **3.**     **The Settlement Provides Adequate Relief to the Settlement Class**

Rule 23(e)(2)(C)(i) overlaps significantly with several *Girsh* factors (*e.g.*, factors 1, 4-9) as both sets of factors advise the Court to consider the adequacy of the settlement relief given the costs, risks, and delay that trial and appeal would inevitably impose. *Compare* Fed. R. Civ. P. 23(e)(2)(C)(i), *with Girsh*, 521 F.2d at 157. Thus, the *Girsh* factors, analyzed below, inform the Rule 23(e)(2)(C)(i) inquiry.[7]

      **a.**     **The Complexity, Expense, and Likely Duration of the Litigation Favors Approval**

"The first *Girsh* factor 'captures the probable costs, in both time and money, of continued litigation.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 320 (3d Cir. 2011) (quoting *Warfarin*, 391 F.3d at 535-36). This action involves complex antitrust issues. As courts in this District have recognized, an "'antitrust class action is arguably the most complex action to prosecute.'" *Castro v. Sanofi Pasteur Inc.*, No. 11-cv-7178, 2017 WL 4776626, at *3 (D.N.J. Oct. 23, 2017) (quoting *In re Remeron End-Payor Antitrust Litig.*, No. 02-cv-2007, 2005 WL 2230314, at *17 (D.N.J. Sept. 13, 2005)).

---

[7] Because notice to the DPP Settlement Class has not yet been issued, the second *Girsh* factor—concerning the reaction of the Class to the Settlement—cannot be assessed at this time. This factor is properly addressed at final approval after notice has been disseminated. However, the named DPPs support the Settlement. *See* Joint Decl. ¶ 40.

13

Courts have also recognized that "continuing litigation sometimes presents plaintiffs with the risk of losing class certification and any substantial trial award, so a settlement which provides immediate and definite relief is preferable to the prospect of receiving no relief at all." *Martina v. L.A. Fitness Int'l, LLC*, No. 12-cv-2063, 2013 WL 5567157, at *6 (D.N.J. Oct. 8, 2013). Because a private resolution of the conflict "reduces expenses and avoids delay," this factor weighs heavily in favor of approving the proposed Settlement. *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 640 (E.D. Pa. 2015).

### b.      The Stage of the Proceedings and the Amount of Discovery Completed Support the Settlement

The relevant inquiry under the third *Girsh* factor is "whether Plaintiffs had an 'adequate appreciation of the merits of the case before negotiating' settlement." *In re Wilmington Tr. Sec. Litig.*, 10-cv-0990, 2018 WL 6046452, at *5 (D. Del. Nov. 19, 2018) (citation omitted). Here, because merits discovery has been stayed, the parties engaged in confidential settlement-related document production and review so that DPPs could become more informed of the relative strengths and weaknesses of their case. DPPs also conducted extensive research when preparing the Consolidated Complaint; responded to multiple motions to dismiss; consulted with industry and economic experts; and participated in multiple virtual and in-person mediation sessions during which the parties debated the merits of the action. Joint Decl. ¶¶ 21, 26, 31-32.

These steps, among others, gave the DPP Interim Co-Lead Class Counsel a clear and realistic appreciation of the value of the case and the benefits of settling with IFF. *See In re Processed Egg Prod. Antitrust Litig.*, 284 F.R.D. 249, 270-71 (E.D. Pa. 2012) (granting preliminary approval even where discovery was stayed, based upon information gathered through investigations and motion practice); *see also Vaccaro v. New Source Energy Partners L.P.*, No. 15-cv-8954, 2017 WL 6398636, at \*5 (S.D.N.Y. Dec. 14, 2017) (finding plaintiffs were well-informed to gauge the strengths and weaknesses of their claims where, despite the lack of formal discovery, plaintiffs reviewed vast amounts of publicly available information, conducted interviews of numerous individuals, and consulted industry experts).[8]

### c.    Plaintiffs' Risks on the Merits Support Preliminary Approval

The fourth, fifth, and sixth *Girsh* factors—the risks of establishing liability, establishing damages, and maintaining the class action through the trial—also support approval. All complex litigation against large companies, ably represented by teams of talented defense counsel, carry inherent risks. "Here, as in every case, Plaintiffs face the general risk that they may lose at trial, since no one can predict

---

[8] *See, e.g., Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 444 (E.D. Pa. 2008) (preliminarily approving settlement before discovery on the merits); *Thomas v. NCO Fin. Sys., Inc.*, No. 00-cv-5118, 2002 WL 1773035, at \*5 (E.D. Pa. July 31, 2002) (same).

the way in which a jury will resolve disputed issues." *See Lazy Oil, Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 337 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir. 1999). But antitrust cases are arguably the most complex action to prosecute, making them even more risky. *See* Joshua P. Davis & Robert H. Lande, *Defying Conventional Wisdom: The Case for Private Antitrust Enforcement*, 48 Ga. L. Rev. 1, 79 (2013) (noting there may be some bias in antitrust litigation in defendants' favor).

Antitrust class actions often take six to eight years to get to trial. Given the procedural posture of the case—with jurisdictional issues pertaining to the foreign defendants, class certification, *Daubert* motions, and summary judgment all undecided, as well as the vagaries of trial and appellate proceedings—the DPPs and their counsel face enormous procedural, factual, legal, and financial risks in continuing to litigate against IFF. Joint Decl. ¶¶ 31-32.

> **d.    The Settlement Amount Is Within the Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation**

The seventh, eighth, and ninth *Girsh* factors—a defendant's ability to withstand a greater judgment and the range of reasonableness of the settlement given the best possible recovery and considering all the attendant risks of litigation—strongly support approval. The proposed Settlement recovers $26,000,000 for the DPP Settlement Class and provides valuable cooperation against the Non-Settling Defendants who strenuously deny liability. IFF is pursuing leniency from DOJ and

may receive the benefits of ACPERA, pursuant to which a successful leniency applicant who provides satisfactory cooperation to civil plaintiffs does not face treble damages or joint and several liability with its co-conspirators.[9] Although IFF could possibly withstand a greater monetary payment, it agreed to provide DPPs with evidence to use against the remaining Defendants, making this an excellent result for the DPP Settlement Class. Joint Decl. ¶¶ 37-39.

The proposed Settlement guarantees a significant recovery for the DPP Settlement Class. The consideration to be paid by IFF, when balanced against the risks of continued litigation that could result in no recovery and substantial delay, demonstrates that the proposed Settlement falls well within the range of what is fair, reasonable, and adequate and clearly merits preliminary approval. *See, e.g.*, *Processed Egg Prods.*, 284 F.R.D. at 255 (approving settlement where one defendant agreed to cooperate in prosecution of case against other defendants).[10]

---

[9] *See* ACPERA, Pub. L. No. 108-237,  §213(a)-(b), 118 Stat. 661, 665.

 IFF's sales, however, remain in the case for purposes of joint and several liability and recovery from the other Defendants, which is a factor supporting approval. *See*, *e.g.*, *In re Packaged Ice Antitrust Litig.*, No. 08-md-1952, 2011 WL 717519, at *17 (E.D. Mich. Feb. 22, 2011) (granting final approval of a settlement where the settlement agreement provides that settling defendants' sales "remain in th[e] action and shall be part of any joint and several liability against any non-settling Defendant"); *In re Auto. Parts Antitrust Litig.*, No. 12-md-2311, 2017 WL 3499291, at *2 (E.D. Mich. July 10, 2017) (similar).

[10] *See also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974) (abrogated on other grounds) ("The fact that a proposed settlement may only amount

17

The Settlement also has significant value as an "icebreaker" to potentially facilitate future settlements. *Id.* at 276 (granting approval of icebreaker settlement with cooperation provision that "aids the Plaintiffs in prosecuting and resolving their claims against the other Defendants"); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) ($7.2 million settlement had "significant value" because "early settlement with one of many defendants can 'break the ice' and bring other defendants to the point of serious negotiations").

### 4. The Remaining Rule 23(e)(2) Factors Support Preliminary Approval

Rule 23(e)(2)(C) provides three more factors to consider in approving a settlement: (i) the effectiveness of the proposed method for distributing relief; (ii) the terms of the proposed attorneys' fees; and (iii) the existence of any other "agreements." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports approval of the proposed Settlement or is neutral and thus does not suggest any basis for concluding the proposed Settlement is inadequate.

### a. The Proposed Method for Distributing Relief Supports Preliminary Approval

"A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." *In re Lucent Techs., Inc., Sec. Litig.*,

---

to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.").

307 F. Supp. 2d 633, 649 (D.N.J. 2004); *In re AremisSoft Corp. Sec. Litig.*, 210

F.R.D. 109 (D.N.J. 2002). This is precisely what the proposed method of distribution

contemplates here: Settlement Class Members submitting valid claims will be

reimbursed their damages from the Net Settlement Fund based upon a *pro rata*

distribution.

The claims process will rely on Defendants' transaction data to the extent

possible. Joint Decl. ¶ 44. Distributions to Settlement Class members will be made

by check or electronic means. *Id.* The proposed *pro rata* plan of distribution, which

minimizes administrative burdens and is widely accepted in antitrust cases, is fair,

reasonable and adequate, and warrants preliminary approval. *See, e.g.*, *In re*

*Remeron Direct Purchaser Antitrust Litig.*, No. 03-cv-0085, 2005 WL 3008808, at

*11 (D.N.J. Nov. 9, 2005) (approving direct purchaser antitrust settlement with *pro*

*rata* plan of distribution); *In re Processed Egg Prods.*, 284 F.R.D. at 255 (same).

> **b.     The Parties Have Agreed to a Confidential Blow Provision**

Rule 23(e)(2)(C)(iv) calls for disclosure of any other agreements entered in

connection with the settlement of a class action. Here, the parties have entered into a

confidential provision relating to the threshold percentage of opt-outs necessary to

19

trigger IFF's right to terminate the proposed Settlement.[11] Joint Decl. ¶ 42. This provision, sometimes called the "walk away" or "blow provision" is routinely utilized in class settlements in this District and elsewhere. *See, e.g.*, *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 237 n.13 (3d Cir. 2002) (noting with approval that "[t]he settlement agreement in this case expressly permitted American Home Products to terminate the settlement agreement, at its discretion, based on the number of opt outs").[12]

### c.     Class Members Are Treated Equitably

Rule 23(e)(2)(D) seeks to prevent the "inequitable treatment of some class members vis-a-vis others." Fed. R. Civ. P. 23(e)(2)(D) Advisory Committee's Note to 2018 Amendments. This factor is satisfied here because, as discussed above, each Class Member is entitled to the same relief depending on how much they purchased and paid for Fragrance Products during the Class Period. *See Hays v. Eaton Grp. Att'ys, LLC*, No. 17-cv-88, 2019 WL 427331, at *13 (M.D. La. Feb. 4, 2019) (the equitable-treatment factor is "easily met" in a *pro rata* settlement "as each class

---

[11] This provision shall be provided to the Court for *in camera* inspection upon the Court's request.

[12] *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 240 (E.D. Mich. 2016), *aff'd sub nom. Marro v. N.Y. State Teachers' Ret. Sys.*, No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017) (amount of threshold "is typically not disclosed" to the class).

member, save the Class representative, will receive the same amount").

> ### d. The Terms of Proposed Attorneys' Fees and Expenses Award and Service Awards Support Preliminary Approval

At a later date, Plaintiffs' Counsel will submit an application to the Court for: (i) an award of attorneys' fees of no more than one-third (33.33%) of the Settlement Amount, (ii) reimbursement of expenses and costs reasonably and actually incurred or expected to be incurred in connection with prosecuting the action not to exceed $3,000,000 (three million dollars); and (iii) reimbursement of expenses and costs incurred in connection with settlement notice and administration.

In their forthcoming fee petition, DPPs will address the requested attorneys' fees under the Third Circuit's *Gunter* factors for the Court to assess at the final approval stage. *See, e.g.*, *Tumpa v. IOC-PA, LLC*, No. 18-cv-112, 2021 WL 62144, at *10-13 (W.D. Pa. Jan. 7, 2021). For purposes of preliminary approval, however, it is sufficient that the requested fee amount—33.33% of the Settlement Amount— is within the range typically approved by courts. *See, e.g.*, *Kopchak v. United Res. Sys.*, No. 13-cv-5884, 2016 WL 4138633, at *5 n.8 (E.D. Pa. Aug. 4, 2016) (deferring approval of attorneys' fees until after fairness hearing); *Orozco v. Eli Timberland Tree Serv. LLC*, No. 24-cv-7045, 2025 WL 2304894 at *2 (D.N.J. Aug. 11, 2025) (Martini, J.) (this Court approving 33.33% and noting that courts in this

21

Circuit routinely approve similar attorneys' fees in FLSA cases).[13]

Plaintiffs will also seek an interim incentive award of $5,000 (five thousand dollars) for each of the four class representatives. Plaintiffs have been active participants in this Action and have spent time consulting with DPP Interim Co-Lead Counsel, reviewing the pleadings, and keeping informed of the progress of the litigation. When called upon to do so, DPPs have agreed to respond to discovery propounded by Defendants. Joint Decl. ¶ 40. Incentive awards are appropriate in these circumstances. In addition, as this Court has held, service awards are not atypical for class representatives and do not impact their ability to adequately represent the class. *Lupian v. Joseph Cory Holdings*, No. 16-cv-5172, 2019 WL 3283044, at *4 (D.N.J. Jul. 22, 2019) (Martini, J.).

---

[13] *See also Demaria v. Horizon Healthcare Servs., Inc.*, No. 11-cv-7298, 2016 WL 6089713, at *4 (D.N.J. Oct. 18, 2016) (Martini, J.) (holding that 33.33% of a $33 million settlement is "fairly standard for the size of the Settlement and the type of lawsuit"); *Holden v. Guardian Analytics, Inc.*, No. 23-cv-2115, 2024 WL 2845392, at *5, *11-12 (D.N.J. Jun. 5, 2024) (Martini, J.) (awarding 33.33% in data breach case); *James v. Global Tel*Link Corp.*, No. 13-cv-04989, 2020 WL 6197511 *10 (D.N.J. Oct. 22, 2020) (Martini, J.) (awarding 33.33% in complex prison phone system case with $25 million settlement fund and citing similar decisions); *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2023 WL 8437034, at *13-18 (E.D. Pa. Dec. 4, 2023) (finding 33.33% of the recovery in antitrust case "consistent with the awarded fee in other, similar cases").

## IV. THE DIRECT PURCHASER SETTLEMENT CLASS IS LIKELY TO BE CERTIFIED FOR SETTLEMENT PURPOSES

DPPs request that the Court certify the DPP Settlement Class for settlement purposes only. The DPP Settlement Class is defined as:

> All Persons and entities, and their successors and assigns, in the United States and its territories who purchased Fragrance Products directly from any of the Defendants or their subsidiaries or affiliates during the period of time between January 1, 2018 and December 31, 2023, INCLUDING Plaintiffs, but specifically EXCLUDING: Defendants, IFF Released Parties, conspirators, the officers, directors, or employees of any Defendant or conspirator, any entity in which any Defendant or conspirator has a controlling interest; any affiliate, legal representative, heir, or assign of any Defendant or co-conspirator, and any person acting on their behalf. Also excluded from the Class are any judicial officer presiding over the Consolidated Action and the members of his/her immediate family and judicial staff, and any juror assigned to the Consolidated Action, as well as any Person or entity who or which submits a valid and timely request for exclusion in accordance with the requirements set forth in the Class Notice and whose request is accepted by the Court.

Ex. A ¶ 1.ll.

The proposed Settlement Class should be certified because it satisfies the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—as well as Rule 23(b)(3)—namely, that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class action treatment is the "superior" method to "fairly and efficiently adjudicat[e] the controversy." Fed. R. Civ. P. 23(b)(3). The Supreme Court has acknowledged the propriety of certifying a class solely for settlement

23

purposes and that the certification burden is lower for "settlement-only class certification." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618, 620 (1997). Importantly, the Court "need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)). The Court should focus instead "on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Id.* at 621. As shown below, this standard is readily satisfied in this case, and the DPP Settlement Class should be certified.

### A.      Rule 23(a) Is Satisfied

#### 1.      Numerosity Is Satisfied

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable[.]" Fed. R Civ. P. 23(a)(1). Where the number of potential plaintiffs exceeds forty, the numerosity requirement is generally fulfilled. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001); *Martinez-Santiago v. Public Storage*, 312 F.R.D. 380, 388 (D.N.J. 2015) (abrogated on other grounds) (citing *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012)). Here, there are hundreds, if not thousands of Settlement Class Members who purchased Fragrance Products directly from the Defendants over the Class Period. Thus, the numerosity requirement is readily satisfied.

### 2.    Commonality Is Satisfied

Commonality considers whether there are "'questions of law or fact common to the class," and the element is satisfied "when there are classwide answers." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015) (quoting Fed. R. Civ. P. 23(a)(2) and citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "For purposes of Rule 23(a)(2), even a single common question will do." *Dukes*, 564 U.S. at 359 (cleaned up). The commonality requirement is easily met in an antitrust case such as this, as the inquiry hinges on the conduct of the defendant(s). *See Sullivan*, 667 F.3d at 297 ("[C]ommonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members . . . .").

DPPs allege a common course of conduct, namely that IFF, Non-Settling Defendants, and other conspirators engaged in anticompetitive behavior and an unlawful conspiracy to fix, raise, or maintain the prices for Fragrance Products in violation of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3). *See generally* ECF No. 107, DPP Consolidated Complaint. The DPPs' claims thus involve common facts surrounding this anticompetitive scheme, including whether Defendants' scheme violated federal antitrust laws, whether it artificially inflated prices for Fragrance Products, whether harm was suffered, and the proper measure of damages. As such, the commonality requirement here is easily satisfied. *See, e.g.*, *In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig.*, 421 F.

Supp. 3d 12, 67 (E.D. Pa. 2019) (commonality met where "[r]esolution of each []

issue[] depends entirely on [defendant's] conduct and, thus, on evidence common to

the class"), *aff'd*, 967 F.3d 264 (3d Cir. 2020).

### 3.    Typicality Is Satisfied

Rule 23(a)(3) requires the named plaintiffs' claims to be typical of the claims

of the class. Fed. R. Civ. P. 23(a)(3). "The typicality inquiry centers on whether the

interests of the named plaintiffs align with the interests of the absent members."

*Stewart*, 275 F.3d at 227 (citation omitted). For the typicality inquiry, a court

compares "the attributes of the plaintiff, the class as a whole, and the similarity

between the plaintiff and the class." *Marcus*, 687 F.3d at 598. In so doing, the court

considers: "(1) the claims of the class representative must be generally the same as

those of the class in terms of both (a) the legal theory advanced and (b) the factual

circumstances underlying that theory; (2) the class representative must not be subject

to a defense that is both inapplicable to many members of the class and likely to

become a major focus of the litigation; and (3) the interests and incentives of the

representative must be sufficiently aligned with those of the class." *Id.* The Third

Circuit has a "low threshold" for satisfying typicality. *In re Nat'l Football League*

*Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016).

Here, the DPPs' claims, and those of the Settlement Class, arise from the same

common course of alleged illegal anticompetitive conduct, are based on the same

26

alleged theories, and require the same kinds of evidence to prove those theories. The typicality prong of Rule 23(a)(3) is satisfied.

### 4.    Adequacy Is Satisfied

The final requirement of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R Civ. P. 23(a)(4). In the Third Circuit, this requirement is met when two prongs are satisfied: (1) the plaintiffs have no interests antagonistic to those of the class; and (2) the plaintiffs' counsel is qualified, experienced, and generally able to conduct the proposed litigation. *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 601-602 (3d Cir. 2009); *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998). The core analysis for the first prong is whether plaintiffs have interests antagonistic to those of the class. The second prong analyzes the capabilities and performance of class counsel based upon factors set forth in Rule 23(g). *See Sheinberg v. Sorensen*, 606 F.3d 130, 132-33 (3d Cir. 2010). DPPs satisfy both prongs.

First, and as explained above, the named DPPs have no interests adverse or "antagonistic" to absent DPP Settlement Class members. DPPs are purchasers of Fragrance Products who seek to hold IFF and the other Defendants accountable for their anticompetitive behavior. Further, DPPs have demonstrated their allegiance and commitment to this litigation by consulting with DPP Interim Co-Lead Counsel,

27

reviewing the pleadings, and keeping informed of the progress of the litigation. When called upon, DPPs have agreed to respond to discovery propounded by Defendants. Their interests are aligned with the interests of absent Settlement Class Members.

Second, DPP Interim Co-Lead Counsel are qualified, experienced, and competent in complex class litigation and have established, successful track records with antitrust class cases and have the ability to fund this litigation. *See* ECF Nos. 32-1 (declaration and exhibits in support of appointment of interim lead counsel). Accordingly, the adequacy requirement is satisfied.

### B. Rule 23(b)(3) is Satisfied

If a proposed class satisfies Rule 23(a), a class action should be certified when, under Rule 23(b)(3), the court finds that common questions of law or fact predominate over individual issues and a class action would be superior to other methods of resolving the controversy. Here, the proposed DPP Settlement Class meets both requirements.

### 1.    Common Issues Predominate

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class

28

members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011).[14] Predominance is a test "readily met" in cases alleging violations of antitrust law. *Amchem*, 521 U.S. at 625. Predominance is also readily satisfied in the settlement context, where there are no concerns about how each legal element will play out at trial. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 269 (3d Cir. 2009).

Here, as in other antitrust cases, common questions exist relating to Defendants' alleged conduct, such as whether they engaged in anticompetitive conduct and whether such conduct caused damage to DPPs and the Settlement Class. If each Settlement Class Member were to bring an individual action, each would need to demonstrate the same conduct of Defendants to prove liability. Because the evidence needed to prove such claims would be the same for all, a finding of predominance is appropriate.

### 2. A Class Action Is Superior To Individual Litigations

Superiority "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Nat'l Football League Players Concussion Injury Litig.*, 821

---

[14] *See also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004) (finding predominance in an alleged "broad-based" campaign to deceive providers and patients regarding a generic drug equivalent).

F.3d at 434 (citation omitted); *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 149 (3d Cir. 2008) (citation omitted). Certification of the DPP Settlement Class under Rule 23 is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Here, the Settlement affords benefits to thousands of putative Settlement Class Members who, absent a class settlement, may not have been aware of their legal rights or may not have had the desire or resources to pursue an individual suit involving the matters at issue. *See In re Wafarin Sodium Antitrust Litig.*, 391 F.3d at 534 (finding superiority requirement satisfied in antitrust class action where there were a "potentially large number of class members" and reasoning in part that "individual consumer class members have little interest in individually controlling the prosecution or defense of separate actions because each consumer has a very small claim in relation to the cost of prosecuting a lawsuit" (citation omitted)). Litigating these claims separately would further unduly burden the judicial system. Fairness and efficiency accordingly weigh in favor of a finding that a class action is the superior method of adjudicating these claims.

## C.    The Settlement Class Members Are Ascertainable

Although not explicitly set forth in the Federal Rules, courts have read into Rule 23 an implicit requirement that a class be "definite" or "ascertainable. The Third Circuit has explained that ascertainability requires: (1) that the class members

30

be identifiable by objective criteria and (2) "'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd v. Aaron's, Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d at 593-94). Plaintiffs are not required to identify all class members at class certification. *Id.* Nor must they "demonstrate that a single record, or set of records, conclusively establishes class membership." *City Select Auto Sales Inc. v. BMW Bank of N. Am., Inc.*, 867 F.3d 434, 441 (3d Cir. 2017). Rather, at this stage of the litigation, Plaintiffs need only show that "class members *can* be identified." *Byrd*, 784 F.3d at 163 (emphasis in original) (citation omitted).

The DPP Settlement Class definition is based on objective, knowable criteria—purchases of Fragrance Products directly from Defendants during the Settlement Class Period—and does not require the Court to rely on impermissible subjective standards, potential Settlement Class Members' beliefs, or a resolution of the merits of the claims. These criteria provide a clean and straightforward way to identify "a particular group that was harmed during a particular time frame, in a particular location, in a particular way," in accordance with the law of this Circuit. *Pollak v. Portfolio Recovery Assocs., LLC*, 285 F. Supp. 3d 812, 841 (D.N.J. 2018)

31

(citation omitted).[15] Moreover, most, if not all, DPP Settlement Class members can be identified through Defendants' sales databases and/or purchase records, which provide a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition. Thus, the DPP Settlement Class satisfies the ascertainability requirement.

**D.      Proposed Settlement Class Counsel Satisfy Rule 23(g) and Will Adequately Represent the Settlement Class**

Pursuant to Rule 23(g), Plaintiffs also move to appoint Linda P. Nussbaum of Nussbaum Law Group, P.C.; Christopher M. Burke of Burke LLP; and Hilary K. Scherrer of Hausfeld LLP, as Settlement Class Counsel. In appointing class counsel, Rule 23(g)(1)(A) specifically instructs the Court to consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. *Id.* Here, each of these considerations weighs strongly in favor of the adequacy of proposed DPP Settlement Class Counsel.

---

[15] *See also* Definition of Class, Ann. Manual Complex Lit. § 21.222 (4th ed.) (explaining in its discussion of ascertainability that "[t]he order defining the class should avoid subjective standards (e.g., a plaintiff's state of mind) or terms that depend on resolution of the merits (e.g., persons who were discriminated against)").

DPP Settlement Class Counsel have substantial experience, individually and collectively, successfully prosecuting antitrust class actions and other complex litigation throughout the United States. At the outset of this case, after full briefing by competing slates of attorneys, the Court appointed Proposed DPP Settlement Class Counsel as Interim Co-Lead Counsel. ECF No. 77 at 2. Since their appointment, Interim Co-Lead Counsel have continued to vigorously prosecute this case. They successfully opposed Defendants' motions to dismiss the DPPs' Consolidated Complaint and engaged in extensive meet and confers with the foreign Defendants regarding jurisdictional discovery. Moreover, these firms have demonstrated commitment to this litigation, devoting the resources and personnel necessary to get to this point—quickly achieving this substantial icebreaker settlement that will be highly valuable to the prosecution of claims against the remaining Defendants. Joint Decl. ¶¶ 7, 21, 39. Accordingly, the proposed DPP Settlement Class Counsel far exceed the requirements of Rule 23(g).

## V. THE HUNTINGTON NATIONAL BANK IS QUALIFIED TO BE THE ESCROW AGENT

Plaintiffs also request that the Court approve The Huntington National Bank as the Escrow Agent for the Settlement Fund. Huntington is a well-known and highly respected expert in the field of escrow account management. Huntington has experience managing similar accounts resulting from class action settlements and was selected by DPP Interim Co-Lead Class Counsel after a competitive bidding

33

process with IFF's consent. Joint Decl. ¶ 41. With the Court's approval, the Escrow Agent will establish the escrow account as a qualified Settlement fund ("QSF") and will comply with all other requirements for the account identified in paragraph 23 of the Settlement Agreement.

## VI.    PLAINTIFFS WILL SEEK APPROVAL OF A NOTICE PLAN AT A LATER DATE

At a later date, Plaintiffs will file a separate motion to approve the form and manner of dissemination of notice to the members of the Settlement Class (the "Notice Plan"). For purposes of formulating the Notice Plan, Plaintiffs will seek production of the Non-Settling Defendants to produce Settlement Class member names and contact information, along with transactional data for the sale of Fragrance Products in the United States. This information will enable Plaintiffs to maximize direct notice to Settlement Class members, which will minimize the need for and the administrative cost of publication notice.

Courts regularly defer the filing and/or entry of a notice plan and the dissemination of notice to permit class counsel to obtain accurate contact information for class members and/or to explore settlement opportunities with other defendants. *See, e.g.*, *Albert v. Glob. Tel\*link Corp.*, No. 20-CV-01936, 2024 WL 4391866, at \*12-\*13 (D. Md. Oct. 2, 2024) (deferring notice to the class because plaintiffs needed to obtain the names and/or contact information of the proposed settlement class members, and the potential to combine notice of the settlement with

34

possible future settlements with other defendants would create efficiencies and cost savings for class members); *Contant v. Bank of Am. Corp.*, No. 17-cv-3139, 2019 WL 12276060, at *9 (S.D.N.Y. July 29, 2019) (deferring plaintiffs' motion for approval of notice and plan of allocation to provide additional time for plaintiffs to obtain settlement class member identifying information and transactional data necessary to finalize their notice plan and plan of allocation); *McKinney v. U.S. Postal Serv.*, 292 F.R.D. 62, 68 (D.D.C. 2013) (courts have deferred the dissemination of notice where "there is a reason for the delay and it would not prejudice those class members who are not before the court") (quoting 7AA Wright, Miller, Kane, & Klonoff, Fed. Prac. & Proc. § 1788 (3d ed. 2005).[16]

## VII.  CONCLUSION

For all the reasons stated above, DPPs respectfully request that the Court preliminarily approve the proposed Settlement with IFF, certify the DPP Settlement Class, appoint Linda Nussbaum, Christopher Burke, and Hilary Scherrer as DPP Settlement Class Counsel, and grant the additional relief as outlined herein.

---

[16] To the extent Defendants do not voluntarily produce such information, Plaintiffs will seek to compel production. Courts regularly order non-settling antitrust defendants to produce customer contact information to effectuate settlement notice. *See, e.g., In re Local TV Advertising Antitrust Litig.*, No. 18-cv-6785, ECF No. 994 (N.D. Ill. Jun. 15, 2023); *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-08637, ECF No. 980 (N.D. Ill. June 22, 2018); *In re Domestic Airline Travel Antitrust Litig.*, 322 F. Supp. 3d 64, 72 (D.D.C. 2018).

Dated: October 17, 2025              Respectfully submitted,

/s/ *James E. Cecchi*
James E. Cecchi
**CARELLA, BRYNE, CECCHI,
BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Tel.: (973) 994-1700
jcecchi@carellabyrne.com

*Liaison Counsel for Direct Purchaser
Plaintiffs*


Linda P. Nussbaum
**NUSSBAUM LAW GROUP, P.C.**
1133 Avenue of the Americas
31st Floor
New York, NY 10036
Tel.: (917) 438-9189
lnussbaum@nussbaumpc.com

Christopher M. Burke
**BURKE LLP**
402 W. Broadway, Suite 1890
San Diego, CA 92101-8577
Tel.: (619) 369-8244
cburke@burke.law

Hilary K. Scherrer
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20006
Tel.: (202) 540-7200
hscherrer@hausfeld.com

*Interim Co-Lead Class Counsel*

36